**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bennett GOLDSTEIN and James Edward Kern, Defendants–Appellants.**

No. 79–5531.

United States Court of Appeals, Fifth Circuit. Unit B

Jan. 26, 1981.

Rehearing and Rehearing En Banc Denied Feb. 25, 1981.

Larry G. Turner, Gainesville, Fla., for James Edward Kern.

John Zwerling, Jonathan Shapiro, Alexandria, Va., for Bennett Goldstein.

Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla., for plaintiff–appellee.

Before KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges, and ALLGOOD *, District Judge.

FRANK M. JOHNSON, Jr., Circuit Judge:

James E. Kern and Bennett Goldstein appeal their convictions for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (1976). Appellants seek reversal of the district court on the grounds that the court erred by denying their pre–trial motion to suppress certain evidence and by denying their timely motions for judgment of acquittal. They allege that the evidence was obtained in violation of their Fourth Amendment rights and that the evidence introduced by the Government at trial was insufficient to support their convictions.

I.

On May 29, 1979, Kern and Goldstein were arrested at the Orlando International Airport by Drug Enforcement Administration [DEA] agents. At approximately 6:00 a. m. Agents Maroney and Fletcher began their Orlando Airport surveillance in the area of the Eastern Airlines' and National Airlines' ticket counters. The agents observed appellant Kern approach the National ticket counter at approximately 6:45 a. m. Kern, who wore a beard, was dressed in a print shirt, dungarees, and boots and was carrying one large suitcase and a smaller brown one. A few minutes later, a Daniel Lynch also approached the National ticket counter; Agent Maroney became interested in the two men when he noticed that they cast side glances towards each other but did not appear to speak to each other. Kern and Lynch departed from the ticket counter separately and then engaged in a short conversation. The DEA agents learned from the National ticket agent that Lynch had purchased a ticket on National Flight #96 to Washington, D.C., and had checked his bags but that Kern, who had attempted to purchase two tickets for the same flight, decided to wait as only one ticket could be confirmed and the other was on a stand–by basis.

Agent Maroney overheard Lynch and Kern discussing the ticket problem and he noticed that shortly after Lynch departed, Kern was joined at approximately 6:51 a. m. by another man, appellant Goldstein. After Kern gave the larger bag to Goldstein˙ and retained the smaller one they walked over to the National ticket counter. Before they purchased their tickets they began checking the flight schedules on the

* District Judge of the Northern District of Alabama, sitting by designation.

various airlines' T.V. monitors. When they returned to the ticket counter, Agent Maroney lined up behind them at approximately 7:00 a. m. and observed the name of Ben Goldstein on the larger bag and James Kern on the smaller bag. Maroney also noticed that, when Kern purchased the two tickets on Flight #96 to Washington, one ticket was in the name of M. Kern and the other was in the name of J. Kern. Appellants checked the two bags and left the ticket counter.

Agent Maroney then decided to examine the luggage checked by appellants and Daniel Lynch. He met with officer Deisler and requested that Deisler bring his police dog Zeke, who was trained to detect the presence of cocaine, heroin and marijuana, to the National baggage area. Agent Maroney first removed Lynch's two bags from the baggage cart and placed them next to each other; he then placed two decoy bags on either side of Lynch's bags. Zeke positively reacted to the presence of narcotics when he began pawing, barking and attempting to bite at Lynch's two bags. The same procedure was utilized during the examination of appellants' two bags and Zeke again made a positive reaction to the two bags.

Agent Maroney informed DEA Agents Fletcher and Wingfield of Zeke's positive reaction and instructed them to question Kern and Goldstein.[1] Agent Wingfield located appellants at Gate #6; he identified himself as a police narcotics officer and asked to speak with them. Kern and Goldstein agreed and produced their tickets upon request; Kern's ticket was in the name of M. Kern and Goldstein's ticket was in the name of J. Kern. Wingfield informed them that a narcotics trained dog had positively reacted to the presence of narcotics in their luggage. Agent Wingfield asked for permission to search their bags and appellants responded by requesting a private conference. After they conferred several feet away from the agents for a brief period of time, Kern and Goldstein indicated that they wanted an attorney. After being advised of their *Miranda* rights, Kern and Goldstein requested another conference. After they conferred for a moment, they were placed under arrest.[2]

After appellants were escorted to the Airport Police Office, Agent Wingfield advised appellants not to talk and at appellants' request placed a call to their Virginia attorney that was answered by an answering device. Goldstein apparently made an unsolicited remark that the agents would only be interested in his bag, but it is not clear from the record whether that comment was made in the waiting area or in the police office. Agent Maroney again requested their consent to search their bags after stating that they would not be charged if the search revealed a "small quantity of drugs obviously for personal consumption"; however, Maroney did not represent that consent would render them immune from prosecution if a large quantity of drugs were found as a result of the search of the luggage.

When Officer Deisler and Zeke arrived at the police station, Zeke started sniffing appellants' two bags without prompting and again began barking and pawing at the bags. Goldstein refused to consent to a search but Kern consented. The search of Kern's bag, conducted in the office, revealed $11,800 in cash, a glass beaker, a bottle with oil residue, small straws, a stand and the top portion of a butane torch, a thermometer, and a few items of clothing

---

1. At the motion hearing, there was some dispute about the timing of the investigatory stop and the sniff by Zeke. Appellants had claimed that they were stopped before their bags were sniffed and therefore such a stop was not justified at that point. The district court found to the contrary and appellants have not raised this issue on appeal.

2. Agent Maroney was questioning Lynch during the interaction between appellants and the other DEA agents. Maroney informed Lynch of Zeke's reaction and received Lynch's consent to the search of his baggage. A small amount of marijuana residue was found at the bottom of each bag along with $2,500 in cash in one bag and a chemical test kit in the other. Lynch was not charged with any crime and was released.

and newspapers. Goldstein and Kern were then jailed and Maroney sought a warrant in order to search Goldstein's bag. When his bag was subsequently searched, it contained $2,415 in cash, approximately two pounds of cocaine[3] in a Sears shopping bag, a few pieces of clothing and a boarding pass for a flight on the previous day from Washington to Ft. Lauderdale, Florida.

The jury found appellants guilty as charged in the one count indictment. On appeal Kern and Goldstein have alleged seven errors committed by the district court, which we will treat in order.

## II.

The first four contentions raised by Kern and Goldstein relate to the district court's denial of their motion to suppress the evidence found in their suitcases at the Orlando airport. Appellants argue that their bags were detained and "sniff–searched" by Zeke solely because they matched certain characteristics of the drug courier profile.[4] They contend that since the drug courier profile alone would not supply the reasonable and articulable suspicion[5] necessary to justify an investigatory stop, the profile, without more, cannot be used to justify the initial detention of their luggage. Moreover, because their bags were sniffed after being removed from the National baggage cart in a non–public area for reasons other than airport security, appellants claim that such action was an intrusion and thus an

unreasonable search and seizure in violation of the Fourth Amendment. They alleged that the district court erred by denying their motion to suppress the evidence found in the suitcases. We disagree.

A number of courts confronted with the issue of the use of dogs trained in drug detection have held that the use of such dogs to sniff for the presence of controlled substances in luggage and other places does not constitute a search within the meaning of the Fourth Amendment. *See, e. g., United States v. Klein*, 626 F.2d 22, 26–7 (7th Cir. 1980) (cocaine detected in suitcases at airport); *United States v. Sullivan*, 625 F.2d 9, 13 (4th Cir. 1980) (PCP detected in suitcases at airport); *United States v. Venema*, 563 F.2d 1003, 1005–6 (10th Cir. 1977) (LSD, marijuana and hashish detected in rental locker at storage company); *United States v. Solis*, 536 F.2d 880, 882 (9th Cir. 1976) (marijuana detected in semi–trailer); *United States v. Bronstein*, 521 F.2d 459, 461 (2d Cir.), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1975) (marijuana found in suitcases at airport). Appellants urge this Court to interpret those cases as requiring at least a reasonable articulable suspicion before a suspected drug courier's luggage may be sniffed; however, we decline to apply such an interpretation for the following reasons.

First, Zeke's sniffing around the exterior of Kern and Goldstein's bags was not an intrusion into an area protected by

---

**3.** The subsequent analysis of the substance seized revealed that the cocaine hydrochloride weighed 766 grams and that 73% (or 559 grams) was pure cocaine.

**4.** *United States v. Ballard*, 573 F.2d 913, 914 (5th Cir. 1978) describes the drug courier profile in detail. The profile is an informally compiled abstract of characteristics thought typical of persons carrying illegal drugs. *United States v. Robinson*, 625 F.2d 1211, 1214 & n.2 (5th Cir. 1980). The profile characteristics manifested by appellants were:

(1) an early morning flight when fewer drug enforcement agents are on duty, from a known source city;

(2) Kern's appearance: beard, print shirt, boots and dungarees;

(3) the side glances between Lynch and Kern appeared to be an attempt by them to belie any association;

(4) the subsequent conversation between Kern and Lynch;

(5) the exchange of luggage between Kern and Goldstein and their review of other flight schedules;

(6) the inconsistent names on the tickets and the luggage;

(7) the large amount of cash found in Kern's bag;

(8) the small amount of clothing in Kern's luggage.

**5.** The Supreme Court has defined reasonable and articulable suspicion as "specific articulable facts, together with rational inferences from those facts." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

the Fourth Amendment. We recognize that, when airport security is not involved, every passenger who has luggage checked with an airline enjoys a reasonable expectation of privacy that the *contents* of that luggage will not be exposed in the absence of consent or a legally obtained warrant.[6] *See Arkansas v. Sanders*, 442 U.S. 753, 764, 99 S.Ct. 2586, 2593, 61 L.Ed.2d 235 (1978); *United States v. Klein, supra*, 626 F.2d at 26; *United States v. Burns*, 624 F.2d 95, 101 (10th Cir. 1980). But the passenger's reasonable expectation of privacy does not extend to the airspace surrounding that luggage. *United States v. Venema, supra*, 563 F.2d at 1005; *United States v. Bronstein, supra*, 521 F.2d at 461.[7] It is undisputed that, had one of the DEA agents through the use of his olfactory sense detected the odor of the controlled substances in the suitcases, a search would not have occurred. *United States v. Sullivan, supra*, 625 F.2d at 13. The agents' use of a canine's more enhanced (through training) olfactory sense cannot convert a sniff of the exterior of those suitcases into a search. *Id.*

■ Moreover, the agents' initial removal of appellants' luggage from the National Airlines baggage cart did not violate the constitutional rights of Kern and Goldstein. Our review of the record reveals that the DEA agents were in the semi–public baggage area with the permission of National. Once Kern and Goldstein released their luggage to the custody of the airlines, they could no longer control who actually handled their bags. We hold that, because the DEA agents' placement of the two bags in a position to be sniffed did not violate appellants' privacy interests in the contents of their bags, their actions in doing so did not constitute an unreasonable seizure within the meaning of the Fourth Amendment. *See United States v. Klein, supra*, 626 F.2d at 26; *United States v. Burns, supra*, 624 F.2d at 101; *see also, United States v. Venema, supra*, 563 F.2d at 1006.

■ We agree with appellants that reasonable suspicion is necessary to justify an investigatory stop and that an individual's manifestation of certain drug courier profile characteristics, without more, does not constitute reasonable suspicion. *Reid v. Georgia*, —— U.S. ——, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam); *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980) (two justices dissenting).[8] But Zeke's sniff of appellants' luggage is not the equivalent of an investigatory stop for the simple reason that the use of Zeke constituted neither a search nor a seizure under the Fourth Amendment. It is because Zeke's sniff did not constitute a search within the meaning of the Fourth Amendment that we hold that reasonable and articulable suspicion is not required before a DEA agent may use a canine trained in drug detection to sniff luggage in the

---

**6.** It is clear that, because of the great danger posed to the public safety by air piracy, searches conducted in the interest of airport safety are subject to a more relaxed test of reasonableness. *See e. g., United States v. Palazzo* 488 F.2d 942 (5th Cir. 1975). However, it should be noted that searches in the interest of drug enforcement cannot be justified on the same basis as those in the airport security context; instead drug searches are to be analyzed under traditional Fourth Amendment principles.

**7.** Although the Courts in *Bronstein* and *Sullivan* concluded that, because of current airport security measures passengers have *no* reasonable expectation of privacy in their checked luggage (*Sullivan, supra*, 625 F.2d at 13; *Bronstein, supra*, 521 F.2d at 462), we decline to reach that conclusion.

**8.** The Supreme Court has not yet set the standard for determining when an investigatory stop constitutes a seizure under the Fourth Amendment. *See United States v. Robinson, supra*, 625 F.2d at 1215; *United States v. Bowles*, 625 F.2d 526, 530–31 (5th Cir. 1980). The Fourth Amendment requires an objective justification for a search or seizure: because any number of profile characteristics can be exhibited by individuals innocent of any wrongdoing, the profile, without more, cannot serve as the justification for an investigatory stop. *United States v. Ballard, supra*, 573 F.2d at 916. *See Smith v. Maryland*, 442 U.S. 735, 745–46, 99 S.Ct. 2577, 2582–83, 61 L.Ed.2d 220 (1979); *Torres v. Puerto Rico*, 442 U.S. 465, 471, 99 S.Ct. 2425, 2429, 61 L.Ed.2d 1 (1979).

custody of a common carrier.[9] Consequently, we do not have to reach the issue of whether Agent Maroney's decision to subject appellants' luggage to a sniff by Zeke was based on a reasonable and articulable suspicion.[10]

Furthermore, once Zeke positively reacted to the presence of drugs in the Goldstein bag, that reaction along with the other facts present supplied the DEA agents with the requisite probable cause to seek a warrant in order to search the luggage and to arrest Kern and Goldstein. *United States v. Klein, supra,* 626 F.2d at 27; *United States v. Sullivan, supra,* 625 F.2d at 13.[11] Appellants further contend that Agent Maroney's supporting affidavit for the search warrant was deficient because it did not allege details about Zeke's training or reliability. However, our review of the affidavit shows that Agent Maroney's allegations with respect to Zeke's qualifications were sufficient. *United States v. Klein, supra,* 626 F.2d at 27; *United States v. Venema, supra,* 563 F.2d at 1007.

Since Kern gave his consent to have his bag searched after he was in a custodial setting, the Government has the burden of showing that his consent was voluntary. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). We conclude that the Government met its burden in showing that Kern's consent was voluntary, especially in light of all the attendant circumstances. On this point, it is significant that Kern and Goldstein were questioned in the same custodial setting at the same time; Kern could have followed Goldstein's example by refusing to consent to a search of the bag with his name on it.

### III.

The remaining contentions involve the district court's denial of their motions for judgment of acquittal. Appellants argue that, because the Government did not introduce any specific evidence of distribution other than the amount of cocaine seized, the Government failed to prove possession with intent to distribute. However, this argument fails since the 559 grams of pure cocaine seized sufficiently support an inference of possession with intent to distribute. *See United States v. Grayson,* 625 F.2d 66 (5th Cir. 1980); *United States v. Vomero,* 567 F.2d 1315 (5th Cir. 1978).

Finally, appellant Kern argues that the Government failed to prove that he had possession of Goldstein's suitcase, either actual or constructive. However, this argument borders on the frivolous in view of Kern's actions regarding the suitcase tagged with Goldstein's name. The agents observed Kern bringing the suitcase into the terminal where he exercised actual control and dominion over it until he gave the larger bag to Goldstein. Kern's general behavior, together with the other facts, would support the inference that Kern at the time he had actual control over the suitcase was aware that it contained the contraband. Furthermore, possession of contraband may be constructive as well as

---

**9.** If we were to hold that Zeke's sniff did constitute a search or seizure, the Government's action would have to be justified on grounds recognized by the Fourth Amendment. However, when the Government's actions do not constitute a search or seizure under the Constitution, such justifications are not required.

**10.** It should be noted that Agent Maroney's observation that Kern and Goldstein met certain profile characteristics, coupled with his observation that the names on the bags (Kern and Goldstein) and the names on the tickets (M. Kern and J. Kern) were inconsistent, would probably meet the reasonable suspicion standard. Conduct that would appear wholly innocent to an untrained observer may be assessed as suspicious by a trained narcotics agent. *See United States v. Bowles, supra,* 625 F.2d at 533.

**11.** If Agent Maroney had searched Goldstein's bag without a warrant, such a search would have been unreasonable. Since the appellants were in custody at that point, there were no exigent circumstances to justify such a warrantless search; further, such a search would not have been an incident to the arrests under these circumstances. *See e. g., United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1976); *United States v. Dien,* 609 F.2d 1038, 1045 (2d Cir. 1979).

actual and may be proven by circumstantial evidence. *See e. g., United States v. Riggins,* 563 F.2d 1264, 1266 (5th Cir. 1977), *cert. denied,* 439 U.S. 878, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978). Reviewing the evidence as a whole, we conclude that it was amply sufficient to support Kern's conviction for possession of the cocaine. *United States v. Johnson,* 469 F.2d 973, 977 (5th Cir. 1972).

Because appellants' contentions are without merit, we hold that the district court was correct in denying appellants' motion to suppress and their motions for judgment of acquittal. Thus the convictions of Kern and Goldstein are

AFFIRMED.