**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose VIERA and Jose Alonso,
Defendants-Appellants.**

No. 80–5073.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 8, 1981.

Victor T. Gutierrez, Miami, Fla., for Viera.

Ted Sakowitz, Fed. Public Def., Miami, Fla., Michael G. Smith, Asst. Fed. Public Defender, Miami Shores, Fla., for Alonso.

David K. Kelley, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, RONEY and VANCE, Circuit Judges.

VANCE, Circuit Judge:

Defendants Jose Viera and Jose Alonso were convicted at a bench trial of two counts of violations of the drug laws, 21 U.S.C. §§ 841 and 846. On appeal they

contend that the district court erred in denying their motion to suppress the introduction of methaqualone (quaaludes) found in their suitcases. We affirm.

Viewed in the light most favorable to the prosecution,[1] the evidence shows that defendants traveled by bus from the Los Angeles area to Miami, changing buses in Jacksonville. The driver on the Jacksonville to Miami leg of the journey was Robert McCort, who had worked as a bus driver for over twenty-four years. McCort transferred the six suitcases belonging to the two defendants to his bus, noting that they were unusually heavy. While McCort was loading the last of the six bags, it came open somewhat, and he observed several bags of pills and white powder in the suitcase. McCort further observed that the defendants were highly alert throughout the trip, and that they kept their eyes on the bus during the lunch stop. His suspicions aroused, McCort telephoned the Drug Enforcement Administration in Miami and reported his observations, adding that he believed the bags of pills contained heroin.

DEA agents met the bus when it arrived in Miami. After verifying with the bus company that McCort was indeed the driver of the bus, the agents observed defendants gather the six suitcases identified by McCort.[2] The agents then identified themselves to defendants and escorted them into the bus terminal.[3] The six suitcases were separated and mingled with nonsuspect suitcases. Trained dogs were brought in which appeared to respond to the presence of narcotics in the six suitcases. McCort's statements and the behavior of the dogs was reported to a magistrate in an affidavit, and a search warrant was issued. Examination of the suitcases led to the discovery of the quaaludes.

Defendants made a pretrial motion to suppress. After a hearing, the magistrate issued proposed findings of fact and conclusions of law recommending against suppression.[4] The defendants objected to some of these findings and conclusions. After hearing argument and independently reviewing the transcript of the magistrate's hearing, the court adopted the findings and conclusions of the magistrate.

■ In the court below defendants concentrated on the argument that the use of dogs to sniff the exteriors of the suitcases was a search in violation of the fourth amendment. After the briefs for this appeal were filed, however, another panel of this court ruled that a dog's "sniff did not constitute a search within the meaning of the Fourth Amendment. . . ." *United States v. Goldstein*, 635 F.2d 356, 361 (5th Cir. 1981). The decision in *Goldstein* settles most of the questions in this case also.

Defendants seek to distinguish *Goldstein* on a number of grounds, none of which we find persuasive. They argue that in this case the government "prepped" the bags before they were smelled, a process not authorized in *Goldstein*. According to the government witness prepping consists of "press[ing] lightly with [the] hands and slowly circulat[ing] the air a little bit. . . ." The purpose of prepping is to procure a scent from the bag. Although *Goldstein* did not deal with prepping specifically, we do not think that a light press of the hands along the outside of a suitcase is sufficiently intrusive to require a different result. "[S]ome investigative procedures designed

---

1. The rule of *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), applies to review of an unsuccessful motion to suppress. *United States v. Boukater*, 409 F.2d 537, 538 (5th Cir. 1969).

2. Appellants argue that McCort was not shown to be previously reliable as required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1969) and that the magistrate therefore improperly relied on his statements in issuing a warrant. We held in *United States v. Bell*, 457 F.2d 1231, 1238 (5th Cir. 1972), that

the *Aguilar* requirements do not extend to an identified bystander.

3. No question has been raised regarding the voluntariness of the defendants' actions in accompanying the agents.

4. The magistrate recommended that certain statements by Viera be suppressed. The government did not object to that recommendation, which was adopted by the trial court.

to obtain incriminating evidence from the person are such minor intrusions upon privacy and integrity that they are not generally considered searches or seizures subject to the safeguards of the fourth amendment." *Bouse v. Bussey*, 573 F.2d 548, 550 (9th Cir. 1977). Prepping as here described falls into this category.

■ In oral argument defendants suggested that the initial seizure of the bags when they were leaving the bus itself constituted a violation of the fourth amendment. The magistrate made no finding on this issue in his report. Defendants did not raise it in their objections to his findings and the district court did not rule on it. Defendants also did not present the question in their brief on appeal. We therefore hold that the point has been waived.[5]

Defendants maintain that the information provided the magistrate in the affidavit was insufficient to support a search warrant. In particular, they note that the dogs were trained to detect heroin, cocaine, hashish, marijuana and related drugs, but not quaaludes.[6] They also argue that the affidavit was deficient in that it only reported previous successful drug identifications by the dogs, not their percentage of accurate results.

■ Defendants' contentions regarding the training of the dogs miss the point. It is true that the dogs were not trained to react to quaaludes, and that the discovery of the quaaludes can in this respect be characterized as fortuitous. However, that conclusion is not grounds for suppression of the evidence. The only question for a reviewing court evaluating the propriety of a search warrant is whether the magistrate had sufficient material before him to permit an independent judgment that there was probable cause to justify a search. Assuming the warrant was properly authorized, anything the government agents found in their search of the suitcases was admissible under the "plain view" doctrine. "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971). If the warrant was valid, the quaaludes were admissible.

■ Under similar circumstances the court in *Goldstein* found probable cause to support a search warrant. 635 F.2d at 362. We see no reason to reach a different result here. The affidavit stated that one of the

---

5. *See United States v. Hicks*, 524 F.2d 1001, 1004 (5th Cir. 1975), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976). Defendants' initial motion to suppress alleged an improper seizure but it was not mentioned in their brief filed with the magistrate. In not reaching the issue, the magistrate may perhaps be said to have tacitly ruled against them. Even so, however, we have no jurisdiction to review decisions of the magistrate. *See Kendall v. Davis*, 569 F.2d 1330 (5th Cir. 1978).

Defendants cite no authority for their claim that the detention of their luggage violated their constitutional rights. The only case our own research has uncovered on which defendants might rely is *United States v. Hunt*, 496 F.2d 888 (5th Cir. 1974), where the court required probable cause for a seizure of obscene materials. It is arguable that *Hunt* would not control here. *Hunt* involved first amendment as well as fourth amendment concerns. The standard in such cases differs from that applied in pure fourth amendment situations, such as the one presented in this case.

A search and seizure involving material "presumptively under the protection of the First Amendment" must clear "a higher hurdle in the evaluation of . . . reasonableness" under the Fourth Amendment than must similar actions aimed at mere contraband, "because we examine what is 'unreasonable' in the light of the values of freedom of expression."

*United States v. Middleton*, 599 F.2d 1349, 1354 (5th Cir. 1979), *quoting Roaden v. Kentucky*, 413 U.S. 496, 504, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757 (1973). *Cf. Penthouse International, Ltd. v. McAuliffe*, 610 F.2d 1353, 1359 (5th Cir.), *cert. dismissed*, 447 U.S. 931, 100 S.Ct. 3031, 65 L.Ed.2d 1131 (1980) (applying *Hunt's* holding to seizure of allegedly obscene materials).

6. Methaqualone (quaaludes) is a schedule II controlled substance, 21 C.F.R. § 1308.12(e)(2), but it is not a narcotic, 21 U.S.C. § 802(16). It apparently is not chemically related to cocaine, heroin, marijuana or hashish.

dogs had successfully discovered drugs on 409 occasions, another in over 100 instances. Those records surely created probable cause to believe that the suitcases contained cocaine, heroin, or a like substance. The warrant was issued to search for those drugs, and was clearly proper.

Finally, defendants complain that they were denied the opportunity to "cross-examine" the dogs, by which they seem to mean testing their ability to detect quaaludes. We have already noted that the dogs' ability to detect quaaludes is irrelevant to the validity of the warrant or the suppression motion. In any event, defendants cross-examined one of the dogs' trainers and presented their own expert witness. Absent evidence of an intentional material misrepresentation in the affidavit, the warrant will not be invalidated. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *United States v. Lewis*, 621 F.2d 1382, 1389 (5th Cir. 1980).

AFFIRMED.

TUTTLE, J., concurs in the result.