UNITED STATES of America,
Plaintiff–Appellee,

v.

Benny Carl LOVELL,
Defendant–Appellant.

No. 87–1682.

United States Court of Appeals,
Fifth Circuit.

July 1, 1988.

Elizabeth Rogers, Fed. Public Defender, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Janet E. Bauerle, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

Benny Carl Lovell, having entered a conditional plea of guilty to a violation of federal narcotics law, appeals from the district court's denial of his motion to suppress evidence. Finding no merit in Lovell's contentions on appeal, we affirm.

## I.

On May 28, 1987, United States Border Patrol agents Michael Jordan ("Jordan") and Bradley Williams ("Williams") were assigned to surveillance at the El Paso International Airport.[1] At approximately 8:30 a.m., the agents observed Benny Carl Lovell ("Lovell") arrive at the Southwest Airlines terminal in a taxi cab. The agents watched Lovell remove one suitcase from the cab while the taxi driver removed another. Both pieces of luggage were large, brown, soft-sided nylon suitcases. Lovell appeared to be very nervous; he was visibly shaking and, after anxiously searching his pockets, Lovell fumbled with his money as he paid the taxi driver. Lovell proceeded to check his bags with a Southwest Airlines skycap. Williams, who was standing next to the skycap, watched as Lovell filled out the baggage claim checks. Williams noted that Lovell's writing was erratic and that Lovell kept glancing around nervously as he wrote. Jordan also observed that Lovell "had a toothpick in his mouth and it was going 90 miles an hour." Lovell then walked into the terminal, glancing frequently over his shoulder as he did so.

At that point, the agents proceeded to the Southwest Airlines baggage area and Williams removed Lovell's suitcases from the conveyor belt. The agents noted that both suitcases were quite heavy and, when they felt the sides of the cases, the agents felt what appeared to be a solid mass. Both agents then compressed the sides of the bags to force air out of them. They did this several times. Upon squeezing the bags, the agents "got a real faint smell of talcum powder and a real strong odor of marijuana." Neither agent could smell marijuana before compressing the bags. Jordan then attempted to apprehend Lovell, but Lovell's plane had already departed for Birmingham, Alabama. The agents contacted the canine unit of the El Paso Police Department and arranged to have a narcotics-sniffing dog brought to the airport. Lovell's suitcases were placed in a lineup and the narcotics dog alerted four times to Lovell's luggage.

The Drug Enforcement Administration ("DEA") was contacted and a search warrant was obtained. Pursuant to the warrant, the agents opened the baggage and found sixty-eight pounds of marijuana in tightly wrapped bundles. The agents called the DEA in Birmingham and gave them a description of Lovell and his flight number. The DEA in Birmingham ap-

---

1. In reviewing a district court's ruling on a motion to suppress based on testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. *United States v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984). Further, we must view the evidence in the light most favorable to the party that prevailed below. *Id.* Therefore, this opinion will reflect, in large measure, the factual findings of the district court below. Those findings are supported by the testimony at the suppression hearing and are, for the most part, undisputed.

prehended Lovell and, after searching him, discovered baggage claim tickets matching those on the bags in El Paso.

On June 16, 1987, a federal grand jury returned a single count indictment charging that Lovell "unlawfully, knowingly, and intentionally did possess with intent to distribute a quantity of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1)." On July 16, Lovell moved to suppress all evidence discovered as a result of the investigation of his suitcases. On July 29, after hearing testimony and arguments of counsel, the district court denied Lovell's suppression motion. Lovell then entered a conditional plea of guilty, *see* Fed.R.Crim.P. 11(a)(2), and reserved the right to appeal the district court's denial of his suppression motion. The district court sentenced Lovell to a two year term of imprisonment, to be followed by a five year special parole term. Lovell filed timely notice of appeal from the judgment. On appeal, Lovell argues that the district court erred in denying his suppression motion because the agents' actions constituted an improper search under the fourth amendment.

## II.

Lovell maintains that the agents' removal of his luggage from the conveyor belt and their manipulation and sniff of that luggage constituted a seizure and search within the meaning of the fourth amendment; consequently, as the agents did not secure a warrant, and possessed neither probable cause nor reasonable suspicion [2] prior to removing, compressing and smelling the bags, Lovell argues that their actions were unlawful and that his motion to suppress should have been granted. The focal point of our review is the question of whether the agents' actions constituted either a search or a seizure, for the decision to characterize an action as either a search or a seizure is in essence a conclusion

about whether the fourth amendment applies at all. *See United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Horton v. Goose Creek Ind. School Dist.,* 690 F.2d 470, 476 (5th Cir.1982), *cert denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). Assuming that the government activity in question does not implicate some other constitutional or statutory provision, if the activity is neither a search nor a seizure, "then the government enjoys a virtual carte blanche to do as it pleases." *See Horton,* 690 F.2d at 476.

In the instant case, Lovell broaches three distinct issues which, in chronological order, are as follows: (1) did the agents' removal of Lovell's bags from the conveyor belt constitute a seizure; (2) did the agents' compression of Lovell's bags constitute either a search or a seizure; and (3) did the agents' sniff of Lovell's bags constitute a search? We will address the search issues first because they are controlled by well-settled precedent in this circuit. Next, we will determine whether recent Supreme Court precedent has, in any way, affected the continuing validity of our cases on the subject. Finally, we will turn to the question of whether the agents' actions constituted a seizure.

### A. *Was There a Search?*

■ In analyzing whether the agents' sniff of Lovell's bags constituted a search, we must determine whether the agents' actions offended reasonable expectations of privacy. *See California v. Greenwood,* — U.S. —, 108 S.Ct. 1625, 1628, 100 L.Ed. 2d 30 (1988); *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Horton,* 690 F.2d at 476. In *United States v. Goldstein,* 635 F.2d 356 (5th Cir. Unit B Jan. 1981), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981), we were confronted by a situation similar to that presented

---

**2.** In this opinion, we shall assume, without deciding, that Williams and Jordan did not possess a reasonable suspicion that Lovell's luggage contained contraband prior to their removal of Lovell's bags from the conveyor belt for a sniff

test. Therefore, we express no opinion as to whether Lovell's very nervous behavior, in and of itself, was sufficient to support a reasonable suspicion.

here. In *Goldstein,* government agents removed the defendants' bags from an airline baggage cart and subjected them to a sniff by a narcotics detection dog. The defendants in *Goldstein* asked us to interpret the dog sniff jurisprudence of several other circuits as requiring at least a reasonable articulable suspicion before a suspected drug courier's luggage could be sniffed. We declined to apply such an interpretation and held that the dog's sniffing around the exterior of the defendants' bags was not an intrusion into an area protected by the fourth amendment. *Goldstein,* 635 F.2d at 360–61. We recognized that when airport security concerns are not implicated, "every passenger who has luggage checked with an airline enjoys a reasonable expectation of privacy that the *contents* of that luggage will not be exposed in the absence of consent or a legally obtained warrant." *Id.* at 361 (emphasis in original). That reasonable expectation of privacy, however, does not extend to the airspace surrounding the luggage. *Id.* Therefore, we held that the use of a trained canine to sniff the exterior of luggage did not constitute a search. *Id.* As a result, we concluded that "reasonable and articulable suspicion is not required before a DEA agent may use a canine trained in drug detection to sniff luggage in the custody of a common carrier." *Id.* at 361–62.

*Goldstein*'s reasoning is equally appropriate in cases, like the one before us, where agents detect an odor of marijuana emanating from luggage by using their own sense of smell. As we noted in *Goldstein,* "[i]t is undisputed that, had one of the DEA agents through the use of his olfactory sense detected the odor of the controlled substances in the suitcases, a search would not have occurred." *Id.* at 361 (quoting *United States v. Sullivan,* 625 F.2d 9, 13 (4th Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1374, 67 L.Ed.2d 352 (1981)); *see also United States v. Burns,* 624 F.2d 95, 101 (10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *United States v. Solis,* 536 F.2d 880, 881 (9th Cir.1976) ("Generally evidence acquired by unaided human senses from without a protected area is not considered an illegal invasion of privacy...."); *United States v. Bronstein,* 521 F.2d 459, 461 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976) (if the police can detect the aroma of narcotics through their own olfactory sense, there can be no serious contention that their sniffing in the area of the bags is tantamount to an illegal search). The agents' sniff of Lovell's bags was not a search.

Lovell asserts that the agents' actions in the instant case were more intrusive than those in *Goldstein* because the agents squeezed his bags. That contention was squarely rejected in *United States v. Viera,* 644 F.2d 509 (5th Cir. Unit B May 1981), *cert. denied,* 454 U.S. 867, 102 S.Ct. 332, 70 L.Ed.2d 169 (1981). In that case, government agents, in order to procure a scent from luggage exposed to a narcotics-sniffing dog, "prepped" the bags by "press[ing] lightly with [the] hands and slowly circulat[ing] the air a little bit." *Id.* at 510. The defendants in *Viera* sought to establish that the dog sniff in their case, unlike the one in *Goldstein,* constituted a search because the agents prepped the bags. In rejecting that contention, we wrote:

> Although *Goldstein* did not deal with prepping specifically, we do not think that a light press of the hands along the outside of a suitcase is sufficiently intrusive to require a different result. "[S]ome investigative procedures designed to obtain incriminating evidence from the person are such minor intrusions upon privacy and integrity that they are not generally considered searches or seizures subject to the safeguards of the fourth amendment."

*Id.* at 510–11 (quoting *Bouse v. Bussey,* 573 F.2d 548, 550 (9th Cir.1977)). While we could hypothesize a "prepping" process so violent, extreme and unreasonable in its execution as to cross the bounds of constitutional propriety, we are not confronted by such a process here. The agents' actions in this case fall squarely within the ambit of our holding in *Viera* and, therefore, did not constitute a search.

Lovell points to recent Supreme Court precedent in an attempt to demonstrate

that *Goldstein* and *Viera* are, to the extent they permit the actions of the agents in Lovell's case, of dubious continuing validity. Lovell points first to the Supreme Court's decision in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Lovell argues that *Place* requires police to have at least a reasonable suspicion before they may subject luggage to a dog sniff. Because of that holding, Lovell argues, our cases which permit a human sniff without reasonable suspicion are obsolete. Lovell, however, misinterprets *Place*.

In *Place*, the Court addressed the fourth amendment status of a sniff by a well-trained narcotics detection dog:

> The Fourth Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Chadwick*, 433 U.S. [1], at 7. We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. *Id.*, at 13. A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells

the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

> In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

*Id.* 462 U.S. at 706–07, 103 S.Ct. at 2644–45. Rather than altering prior precedent in this circuit, therefore, *Place* actually confirms our earlier conclusion that a dog sniff is not a search. And, at a minimum, *Place* does not undermine our conclusion that a human sniff is not a search.[3]

Lovell also argues, however inartfully, that the recent Supreme Court decision in *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), implicitly overrules our holdings in *Goldstein* and *Viera*. In *Hicks*, the police entered the defendant's apartment in response to a report that a bullet was fired through the floor of the defendant's apartment, striking and injuring a man in the apartment below. The police entered the premises to search for the shooter, for other victims, and for

---

**3.** In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court recognized that the circuit courts were, at that time, in disagreement as to whether using a dog to detect drugs in luggage is a search (the Ninth Circuit—the only circuit which had ruled a dog sniff a search—had not as yet rendered its en banc final decision in *United States v. Beale*, 736 F.2d 1289 (9th Cir.) (en banc), *cert. denied*, 467 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), ruling that a sniff is not a search). The Court noted, however, that "no Court of Appeals has held that *more* than an articulable suspicion is necessary to justify this kind of a warrantless search *if indeed it is a search*." *Id.* at 505 n. 10, 103

S.Ct. at 1328 n. 10 (emphasis added). The Court also expressly recognized, citing *Goldstein* and *Viera*, that the law in this circuit "was and is that 'use of [drug-detecting canines] constitute[s] neither a search nor a seizure under the Fourth Amendment.'" *Id.* at 505 n. 10, 103 S.Ct. at 1328 n. 10 (citations omitted). The Court's references to *Goldstein* and *Viera* were not pejorative. Under the circumstances, we do not read *Royer* as indicating that *Goldstein* and *Viera* are of doubtful continuing validity; rather, *Royer* supports our conclusion that *Goldstein* and *Viera* continue to be binding precedent in this circuit and do not conflict with recent Supreme Court jurisprudence.

weapons. During the course of the search, one of the officers noticed some expensive stereo equipment which seemed out of place in the squalid and otherwise poorly furnished apartment. Suspecting that the equipment was stolen, the officer read and recorded the serial numbers—moving some of the components, including a turntable, in order to do so—which he then reported by phone to police headquarters. The equipment was determined to have been stolen and the defendant was indicted for the robbery.

The Supreme Court determined that the officer's moving of the equipment constituted a "search" separate from the search for the shooter, victims and weapons which was the lawful objective of the officer's entry into the apartment. *Hicks,* 107 S.Ct. at 1152. The Court's ruling was premised on its resolution of the privacy interest inquiry:

> Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of respondent's privacy interest.... But taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry. This is why ... the "distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches" is much more than trivial for purposes of the Fourth Amendment.

*Id.* (citations omitted).

Lovell relies on *Hicks* presumably in an attempt to demonstrate that any movement of his luggage by the officers—whether lifting or squeezing—was sufficient to constitute a search. Lovell's argument ignores the fact that the Court's opinion in *Hicks* emphasized that the physical intrusion, while limited, occurred in the defendant's apartment where he clearly had a legitimate expectation of privacy. *Id.* at 1152–54. Hicks' expectation of privacy—that the contents of his apartment would remain undisturbed and that items which could conceivably have been hidden under the stereo would stay hidden—was clearly intruded upon when the officer moved the equipment in order to expose something which was not in plain view. By contrast, the agents' actions here occurred in a semi-public baggage area in the airport after Lovell entrusted the handling of his bags to a common carrier. Lovell had no reasonable expectation that his luggage would not be moved or handled. His reasonable expectation of privacy with respect to his luggage—that the contents would not be exposed to view—was not compromised by the agents' actions. *Hicks* is not inconsistent with *Goldstein* and *Viera*.

**B. *Was There a Seizure?***

We must now examine whether the agents' removal of Lovell's bags from the conveyor belt and their subsequent compression of those bags constituted a seizure. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656. In *Place,* the Court examined "whether the Fourth Amendment prohibits law enforcement authorities from temporarily detaining personal luggage for exposure to a trained narcotics detection dog on the basis of reasonable suspicion that the luggage contains narcotics." 462 U.S. at 698, 103 S.Ct. at 2639. The Court, while concluding that the sniff was not a search,[4] went on to reason that there was

4. While the Court majority in *Place* has been criticized for exploring the issue of whether a dog sniff is a search because its resolution was unnecessary to the Court's decision, *see, e.g., Place,* 462 U.S. at 719, 103 S.Ct. at 2651 (Brennan, J., concurring); *id.* at 723, 103 S.Ct. at 2653 (Blackmun, J., concurring), the Court later characterized its statement in *Place* as a holding, saying that "the Court held that subjecting luggage to a 'sniff test' by a trained narcotics detection dog was not a 'search' within the meaning of the Fourth Amendment." *Jacobsen,* 466 U.S. at 123, 104 S.Ct. at 1662. Therefore, whether or not the statement in *Place* is characterized as a holding or dictum, we agree with the Ninth Circuit that "the Supreme Court has clearly di-

undoubtedly a seizure of the defendant's luggage when it was taken *from his custody* in order to arrange exposure to a narcotics detection dog. *Id.* at 707–09, 103 S.Ct. at 2644–46.

In reaching that conclusion, the Court evaluated the investigative detention of a person's luggage in the same manner as it would evaluate the investigative seizure of the person himself. *Id.* at 708 & n. 8, 103 S.Ct. at 2645 & n. 8. While the person whose luggage is detained is technically free to continue his travels, the Court reasoned, he may be effectively restrained from doing so as "he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return." *Id.* Therefore, the Court held that where the police seize luggage *from the traveller's custody*, the limitations applicable to investigative detentions of the person, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), should define the permissible scope of the investigative detention of the bags on less than probable cause. The Court went on to rule that the prolonged (90 minutes) detention of the defendant's luggage—exacerbated by the agents' failure to accurately inform the defendant of the place to which they were transporting his bags, of the length of time he might be dispossessed, and of what arrangements would be made for the return of his luggage should the investigation prove fruitless—rendered the seizure unreasonable. *Place*, 462 U.S. at 710, 103 S.Ct. at 2646.

The facts in *Place* are clearly distinguishable from those before us. Lovell had surrendered his bags to a third-party common carrier [5] with the expectation that the carrier would transport the bags to Lovell's destination for him to reclaim when he arrived. There is no suggestion that if the agents had not smelled marijuana, Lovell's travel would have been interfered with or his expectations with respect to his luggage frustrated. *See United States v. Beale*, 736 F.2d 1289, 1292 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). The agents' brief removal and compression of Lovell's bags cannot be analogized to a seizure of Lovell himself. *See Place*, 462 U.S. at 707–09, 103 S.Ct. at 2644–46. The momentary delay occasioned by the bags' removal from the conveyor belt was insufficient to constitute a meaningful interference with Lovell's possessory interest in his bags. As a result, the agents' actions did not constitute a seizure. *See Goldstein*,[6] 635 F.2d at 361; *Beale*, 736 F.2d at 1292.

The agents' detection of the smell of marijuana along with the other facts present supplied the agents with the requisite probable cause to retain Lovell's luggage and seek a warrant in order to search the bags and arrest Lovell. *See Goldstein*, 635 F.2d at 362. Therefore, the district court did not err in dismissing Lovell's motion to dismiss.

### III.

For the foregoing reasons, the judgment is AFFIRMED.

---

rected the lower courts to follow its pronouncements." *Beale*, 736 F.2d at 1291.

5. In *Place*, the Court recognized that the intrusion on possessory interests occasioned by a detention of one's personal effects can vary both in its nature and extent, 462 U.S. at 705, 103 S.Ct. at 2643, and that where the owner has relinquished control of his property to a third party, there is less of an intrusion than where the property is taken from the immediate custody and control of the owner, *id.*

6. We recognize that there is language in *Goldstein* which could be read to indicate that the agents' removal of the bags from the conveyor belt *was* a seizure, but that it was not an unrea-

sonable one. In *Goldstein*, we held that "because the DEA agents' placement of the two bags in a position to be sniffed did not violate appellants' privacy interests in the contents of their bags, their actions in doing so did not constitute an unreasonable seizure within the meaning of the Fourth Amendment." *Goldstein*, 635 F.2d at 361. Our conclusion that the agents' actions did not constitute an "unreasonable seizure," however, does not imply that their actions constituted a reasonable seizure. Rather, since there was no violation of the appellants' privacy interests in *Goldstein*, there could not have been any seizure at all, reasonable or otherwise. *See Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656.