The UNITED STATES of
America, Plaintiff,

v.

$252,671.48, IN UNITED STATES
CURRENCY, Defendant, In Rem.

Fortune Price Van William
Sanders, Claimant.

Civ. A. No. 5–88–0245W.

United States District Court,
N.D. Texas,
Lubbock Division.

Feb. 20, 1990.

Mary Ann Moore, Asst. U.S. Atty., Dallas, Tex., for plaintiff.

Alton R. Griffin, Law Offices of Alton R. Griffin, Lubbock, Tex., for claimant—Fortune Price Van William Sanders.

## MEMORANDUM OPINION

WOODWARD, Senior District Judge.

This case came on for consideration by the Court on February 14, 1990, upon Cross–Motions for Summary Judgment. After hearing oral argument of counsel for the United States and for the Claimant, and after considering the Government's Motion, together with supporting affidavits, the Claimant's Cross–Motion, and the supporting briefs, the Court is of the opinion and finds that the motion for Summary Judgment filed by the United States of America should be granted, and that Claimant's Cross–Motion for Summary Judgment should be denied.

The Government has filed a Complaint for Forfeiture wherein it seeks to recover $252,671.48 which was seized from baggage belonging to Claimant, Fortune Price Van William Sanders, (herein called Claimant) on or about September 21, 1988.

The Government has filed affidavits from Border Patrol Agent L.D. Kelley (Kelley), Lubbock Drug Enforcement Administration Task Force Officer Luis Medina (Medina), Internal Revenue Service Criminal Investigation Special Agent John W. McKee, and one Kevin P. Kavanaugh, in support of its Motion for Summary Judgment. Claimant has not filed any controverting affidavits.

On or about September 21, 1988, Claimant, a youth of approximately 17 years of age, was a passenger on a bus and while stopped in Carlsbad, New Mexico, at the bus station, Claimant got off the bus for a short period of time.

While making a routine bus check, Border Patrol Agent L.D. Kelley, observed a black suitcase and a blue and white striped cloth bag above an empty seat. Agent Kelley questioned the person nearest the suitcase to determine whether the suitcase was his and was told no. Agent Kelley turned the suitcase about looking for a name tag, and observed that the suitcase was locked and did not have an identification tag. By affidavit, Kelley states that he "turned the suitcase and could feel an object that could have been some type of narcotics." Based upon his training and experience in dealing with narcotics traffickers, Kelley states that he was suspicious of the bags.

Claimant then returned to the bus and acknowledged that the bags belonged to him. Claimant gave permission for Kelley to look in the suitcase and produced a key from his right front pocket. Kelley observed a large bundle of money in Claimant's pocket when he was obtaining the key. Claimant stated to Agent Kelley that he did not have any drugs. Kelley looked into the bag and observed a pair of blue jeans on top of a large green sack. When he touched the green sack and its contents, he said that he could feel what felt like money or sacks of drugs. Claimant stopped Kelley from looking further into the bag. Claimant was informed that Kelley would attempt to obtain a search warrant.

Kelley then notified Border Patrol Agent Jesse Collins in Lubbock of the situation, who in turn alerted the DEA Task Force. Kelley then proceeded to follow the bus to Brownfield, Texas.

When the bus arrived in Brownfield, a narcotic detecting dog from the Lubbock Police Department was used and the dog alerted to the two bags belonging to Claimant. Following the detection of the two bags by the trained dog, a state search warrant was obtained, the bags were searched, and the United States currency in the amount of $252,671.48 was discovered and seized. According to the agents, the money had a strong odor of marijuana. After discovery of the currency, Claimant

denied knowledge of the ownership of the money.

Agent Kelley found a motel receipt from the LaQuinta Inn in Tucson, Arizona, hidden by the window of the bus near where Claimant had been sitting. Although the motel receipt was not in Claimant's name, Claimant admitted that the receipt was his and that he had used a different name when he checked into the motel on September 19, 1988. The check-out was on September 20, 1988.

Additional investigation indicated that Claimant was born on September 23, 1970, and that he had no legitimate employment income at the time of the seizure of the currency.

The uncontroverted affidavit of Kevin P. Kavanaugh establishes that Kavanaugh was the middle-man on numerous occasions between Stephen "Vince" Sanders (Claimant's brother) and Kavanaugh's marijuana suppliers in Tucson, Arizona. Kavanaugh would call his suppliers from Kansas City and tell them when he would be in Tucson, and where he would be staying. Vince Sanders would also go to Tucson and the exchange of cash for marijuana usually took place at one of three hotels in Tucson—the Doubletree, Smuggler's Inn, and the Radisson Suites. The trips to Tucson with Vince Sanders ended around September 18–20, 1988. A drug buy which had been set up was called off by Vince Sanders on or about September 19, 1988, after Vince Sanders had been stopped leaving a drug house in Tucson and a pistol confiscated. Vince Sanders was questioned and released after the stop. Fortune Sanders, the Claimant, was in Tucson with his brother during this period of time, i.e. September 18–20, 1988. Kavanaugh testifies that both Vince Sanders and Claimant were upset about being stopped by the police and they decided to call the drug deal off. Further Vince Sanders and Claimant discussed splitting the money they had taken to Tucson to purchase the marijuana so that if either one of them was stopped, they would not lose all their money.

Claimant takes the position that when Agent Kelley "turned" the black suitcase to find an identification tag, that action constituted a search without a warrant, without any probable cause, and that this illegal search voids the validity of any later act or seizure made under a search warrant; thereby, negating the Government's right to forfeiture of the currency.

Claimant further argues that the affidavit of Kavanaugh, a "self-confessed drug dealer," only links Claimant's brother to illegal drug deals, but that there is no evidence relating to illegal acts on the part of Claimant, and thus his money.

The Government submits that the only issues before the Court are (1) whether the Government has shown probable cause for the seizure and forfeiture of the respondent property, and (2) whether the respondent property is forfeitable to the United States.

Summary Judgment is proper when it is found that no genuine issue of material fact remains for trial and that judgment is proper as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

As noted above, Claimant did not file any controverting affidavits, and the Federal Rules do not require him to do so. However, his failure to do so "leads only to the court's acceptance as true of the facts set forth in the [movant's] affidavits ..." *Wang v. Lake Maxinhall Estates, Inc.*, 531 F.2d 832, 835 n. 10 (7th Cir.1976); *Kaszuk v. Bakery and Confectionery Union*, 791 F.2d 548, 558 (7th Cir.1986).

Claimant relied on *Arizona v. James Thomas Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) for his argument that the "turning of the bag" constituted an illegal search. In *Hicks*, the police responded to a report that a bullet was fired through the floor of Hicks' apartment, striking and injuring a man in the apartment below. The police entered the apartment looking for the shooter and weapons. During the search, one of the officers noticed some expensive stereo equipment in an otherwise poorly furnished apartment. The officer moved the components to record the serial numbers because he suspected that the equipment was sto-

len. The Supreme Court determined that the moving of the equipment was a search separate from the search for the shooter and weapons. The Court found that the moving of the equipment was illegal based upon a privacy interest and the fact that such action was unrelated to the objectives of the initial entry into the apartment.

The Fifth Circuit in *United States v. Lovell*, 849 F.2d 910 (5th Cir.1988) discussed and distinguished the *Hicks* case explaining that *Hicks* had a legitimate expectation of privacy in his apartment. In *Lovell*, the agents' actions occurred in a semi-public baggage area in an airport where the agents removed Lovell's bags from a conveyor belt and compressed the sides of the bag. The Fifth Circuit noted that "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *Lovell* at 915, quoting *United States v. Jacobsen*, 466 U.S. 109 at 113, 104 S.Ct. 1652 at 1656, 80 L.Ed.2d 85 (1984). The Fifth Circuit found that "the agents' brief removal and compression of Lovell's bags cannot be analogized to a seizure of Lovell himself." *Lovell* at 916. The Court had earlier noted that "where the police seize luggage *from the traveler's custody*, the limitations applicable to investigative detention of the person ... should define the permissible scope of the investigative detention of the bags on less than probable cause." *Id. See also U.S. v. Jaquez*, 849 F.2d 935 (5th Cir.1988) finding that a Border Patrol Agent's removal of a bag from an airport baggage area, his squeeze of the bag to procure and his subsequent sniff did not constitute a search or seizure.

The second possible "illegal" search of Claimant's bag came when the trained narcotics dog alerted to the bags on the bus in Brownfield, Texas. However, in *United States v. Goldstein*, 635 F.2d 356 (5th Cir. 1981), the Fifth Circuit held that a dog's sniffing around the exterior of the suitcases was not an invasion or intrusion into a Fourth Amendment area, and that the use of a trained narcotics dog to sniff the bags did not constitute a search. *Id.* at 361. *See also Lovell* at 913.

 Even if the "turning of the bag" and the "sniff by the narcotics dog" were illegal searches, which this Court does not find, that would not prohibit the Government from seeking forfeiture, as an illegal seizure does not jeopardize the Government's right to seek a forfeiture if probable cause to seize can be supported with untainted evidence. *United States v. Monkey*, 725 F.2d 1007, 1012 (5th Cir.1984); *United States v. One 1978 Mercedes Benz, Four-Door Sedan*, 711 F.2d 1297, 1302–1303 (5th Cir.1983); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444 (9th Cir.1983); *United States v. U.S. Currency $31,828*, 760 F.2d 228 (8th Cir.1985).

Claimant argues that there is no evidence to connect Claimant to any illegal drug activity. However, the Government may establish probable cause for forfeiture by circumstantial evidence. *United States v. $38,600.00 in U.S. Currency*, 784 F.2d 694 (5th Cir.1986) establishes that:

> Under 21 U.S.C. Sec. 881(a)(6), the government's initial burden in a drug forfeiture case is to show " 'probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute;' i.e., the exchange of a controlled substance." *United States v. $364,960 in United States Currency*, 661 F.2d 319, 323 (5th Cir.1981). The probable cause threshold in this context is the same as that which applies elsewhere: "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id.* ... 784 F.2d at 697.

 Probable cause established after the initial seizure can be used to prove the Government's right to forfeiture. In *United States v. Monkey, supra* at 1011, the Fifth Circuit held:

> Once the government files a libel of forfeiture, the validity of a pre-libel seizure is not necessary to sustain the proceeding. The issue becomes whether there is probable cause to believe that the [property] was being used illegally. Whether the government had probable cause *when it seized* the [property] affects only

**258**

the admissibility of evidence obtained through the seizure. [emphasis in original]

"[A] large amount of money, found in combination with other persuasive circumstantial evidence, ... is frequently held sufficient to establish probable cause." *United States v. $38,600.00 in U.S. Currency, supra* at 697.

Irregardless of whether or not there was an illegal search, the Court finds that the following summary judgment evidence is sufficient to establish probable cause for the belief that a substantial connection existed between the $252,671.48 seized and some illegal drug activity:

(1) The uncontroverted Affidavit of Kevin P. Kavanaugh of the drug trafficking involvement of Claimant's brother; that Claimant was with his brother in Tucson during the period September 18–20, 1988; that Kavanaugh was the middle-man between Claimant's brother and Kavanaugh's marijuana suppliers in Tucson; that a drug deal was called off on September 19, 1988, by Claimant's brother; and that Claimant and his brother discussed splitting the money they had taken to Tucson to purchase drugs so that it would not all be lost if one of them was stopped.

(2) The unexplained and unusually large sum of money found in Claimant's bags in Brownfield, Texas.

(3) The fact that Claimant was a young man of 17 years of age and had no legitimate means of income.

(4) The fact that a motel receipt was found, which Claimant admitted was his, showing that Claimant was in Tucson during the period September 18–20, 1988.

(5) The fact that Claimant used an alias when he checked into the motel in Tucson.

(6) The alerting by the trained narcotics dog to Claimant's bags, indicating a detection of narcotics.

(7) The odor of marijuana when the bags were opened in Brownfield pursuant to a state search warrant.

Claimant has failed to rebut any of the evidence produced by the Government to establish probable cause. "If unrebutted, a showing of probable cause alone will support a forfeiture." *United States v. Little Al, et al.,* 712 F.2d 133, 136 (5th Cir.1983).

The Court therefore finds that the property, i.e. $252,671.48 in United States currency, be condemned by judgment and forfeited to the United States of America.

Judgment shall be entered accordingly.