TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00156-CR


NO. 03-00-00157-CR





The State of Texas, Appellant


v.


Ronald David Parnell, Appellee





FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NOS. CR99-159 & CR99-160, HONORABLE GARY L. STEEL, JUDGE PRESIDING





 The State appeals from the district court's order granting Ronald David Parnell's
motion to suppress in these two narcotics cases. In two points of error, the State claims that the
district court abused its discretion in granting the motion to suppress because Parnell's detention
for a canine sweep of his car was based on reasonable suspicion. Because we find that the
detention was based on reasonable suspicion, we reverse.


PROCEDURAL AND FACTUAL BACKGROUND

 While on patrol duty on the night of January 27, 1999 in Comal County, Trooper
Timothy Upright of the Texas Department of Public Safety stopped Parnell for speeding. (1) Once
stopped, the trooper noticed that the car had Oklahoma license plates and resembled a police car. 
It was solid black, with twin "whip" antennae, and had a red ball cap on the dashboard. As
Trooper Upright started to get out of his patrol car, Parnell emerged quickly from his vehicle
without any shoes on. Trooper Upright testified that he told Parnell he could get back into the
car and put his shoes on. (2) Parnell immediately told the trooper he had just had a fight with his
girlfriend in Corpus Christi and was headed home to Oklahoma. Trooper Upright noticed that
Parnell was nervous, overly talkative, and had hyperactive mannerisms. As he approached the
car, he observed numerous articles of female clothing in the back seat of the car.

 As Parnell continued to discuss the fight with his girlfriend and the course of their
relationship, Trooper Upright asked him whether he had any illegal contraband in the car. Parnell
replied that he did not. In response to the trooper's request to search the vehicle, Parnell
responded: "Well, there's no telling what--she had some of her friends in the car. I mean, you
know, I wouldn't want to go to jail over something they had. I would rather you not." Parnell
then told the trooper that the trooper could check him and that he had not been drinking; Parnell
volunteered to take a sobriety test.


 The trooper then returned to his patrol car and requested a check for driver's
license, outstanding warrants, and criminal history. At the same time, the trooper checked on the
availability of a canine unit and asked that it be sent to his location for a "free-air" (3) search. 

 As the trooper wrote out a warning ticket for speeding, Parnell continued to discuss
his relationship with his girlfriend, her father's evident dissatisfaction with her involvement with
Parnell, and Parnell's belief that she was an angel sent from heaven after the death of his niece
"on the highway not too long ago." As Parnell talked and Trooper Upright observed his
demeanor, the trooper observed that Parnell appeared to be under the influence of a controlled
substance.

 Within three minutes after the trooper completed writing out a warning ticket to
Parnell, the canine unit arrived and was deployed to perform an exterior "sweep" of the car. The
dog immediately alerted to the presence of drugs. The officers then searched the car and found
various controlled substances. 

 Parnell was indicted, as an habitual offender, for the offenses of possession of
methamphetamine with intent to deliver and possession of hashish and marijuana. See Tex. Health
& Safety Code Ann. §§ 481.112, .121 (West Supp. 2000). At the suppression hearing, Parnell
did not dispute that the trooper acted within his authority when he stopped him for a traffic
violation. He contended, however, that because the trooper did not have reasonable suspicion at
the time of the request for the canine unit, the detention beyond the issuance of the citation was
not supported by reasonable suspicion and thus was unreasonable in violation of the Fourth
Amendment. The only witness to testify at the hearing was Trooper Upright. 

 The district court granted the motion to suppress. The court made the following
findings of fact and conclusions of law:



 at the time he requested a status check of Parnell's license and a check for
warrants, the trooper also called for a canine unit;

 the trooper received the requested information and issued a warning citation
approximately nine minutes after the initial stop;

 Parnell was detained for approximately three more minutes waiting for the
canine unit to arrive;

 the dog alerted to the presence of drugs upon a perimeter sweep of the
exterior of the vehicle;


 


 at the time he requested a canine unit, the trooper did not have reasonable
suspicion to further detain Parnell; and


 


 because the trooper did not have reasonable suspicion at the time he
requested a canine unit, Parnell was unlawfully detained beyond the
issuance of the citation, and the seizure of the narcotics was the result of
an unlawful detention. 




 In its order, the court specifically found that the initial stop and detention for a
license check and issuance of a ticket were lawful. But the court further found that because the
trooper did not have reasonable suspicion to believe Parnell's automobile contained narcotics at
the time he requested the canine unit, any detention beyond the issuance of the traffic citation was
unlawful and any evidence seized was tainted by the unlawful detention. 


DISCUSSION

 On appeal, the State contends that the district court erred in granting the motion
to suppress because the canine search was supported by reasonable suspicion to believe Parnell's
vehicle contained controlled substances and the search was the result of an otherwise lawful
detention. The State further contends that the district court erred in finding that, because the
trooper did not have reasonable suspicion at the time the canine unit was requested, any further
detention for a canine sniff was unlawful.


Standard of Review

 The appropriate standard of review for a suppression ruling is a bifurcated review,
giving almost total deference to the trial court's findings of fact, but conducting a de novo review
of the court's application of law to those facts. See Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000) (citing Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App.
1999)). Thus, in reviewing the factual basis for the trial court's ruling, we review the evidence
in a light most favorable to the ruling. See id. In a suppression hearing, the trial court is the sole
trier of fact and judge of the credibility of the witnesses and the weight to be given their
testimony. See State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). We will review
de novo the trial court's application of the law to the facts. See id. Thus, giving weight to the
district's court findings of fact, we review the question of reasonable suspicion de novo. See
Ornelas v. United States, 517 U.S. 690, 699 (1996).


Initial Stop

 The temporary detention of individuals during the stop of an automobile constitutes
a "seizure" of "persons" within the meaning of the Fourth Amendment. See Whren v. United
States, 517 U.S. 806, 809 (1996); Delaware v. Prouse, 440 U.S. 648, 653-54 (1979). A traffic
stop is analogous to a Terry stop and courts apply the Terry investigative detention test to vehicle
investigatory stops. See Whren, 517 U.S. at 810; Berkemer v. McCarty, 468 U.S. 420, 439
(1984). The decision to stop an automobile is generally deemed to be reasonable where the police
have probable cause to believe that a traffic violation has occurred. See Whren, 517 U.S. at 810;
Crittenden v. State, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995). With the presence of an
objectively valid reason for stopping a car such as a traffic violation, the constitutional
reasonableness of a traffic stop does not depend on the actual motivations of the individual officer
involved. See Whren, 517 U.S. at 813. 

 Here, the trooper's initial stop of Parnell was clearly valid. Because the trooper
saw Parnell commit a traffic violation by speeding, he had an objective basis for stopping the
vehicle. See Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). It was also
reasonable for the trooper to check the validity of a presented driver's license and to check for
outstanding warrants. (4) Having made a valid traffic stop, the officer may detain the offending
motorist while the officer completes the tasks related to the traffic violation, such as computerized
checks of the vehicle's registration, the driver's license and criminal history, and the writing up
of the citation or warning.


Reasonable Suspicion and the Continued Detention

 In its findings of fact, the district court found that the initial stop lasted nine
minutes and that Parnell was detained for an additional three minutes for the canine sniff. Thus,
the issue here is whether, given the lawfulness of the initial stop, the resulting detention "was
reasonably related in scope to the circumstances which justified the interference in the first place." 
Terry v. Ohio, 392 U.S. 1, 20 (1968). An investigative detention must be temporary and last no
longer than is necessary to effectuate the purpose of the stop. See Davis v. State, 947 S.W.2d
240, 244-45 (Tex. Crim. App. 1997).

 For a detention to be reasonable, an officer's questions must relate to the purpose
of the stop. See Terry, 392 U.S. at 19-20. During this process, the officer may ask the motorist
routine questions and he may act on whatever information is volunteered. (5) See United States v.
Sharpe, 470 U.S. 675, 678 (1985); Powell v. State, 5 S.W.3d 369, 377 (Tex. App.--Texarkana
1999, pet. ref'd), cert. denied, 120 S. Ct. 1976 (2000); Mohmed v. State, 977 S.W.2d 624, 628
(Tex. App.--Fort Worth 1998, pet. ref'd). The officer may ask the detainee questions to determine
his identity and to try to obtain information confirming or dispelling any suspicions the officer
may have concerning the responses to his questions. If the detainee's answers dispel the officer's
suspicions, he must be released. See Berkemer, 469 U.S. at 439-40. However, if the responses
of the detainee to the officer's questions and the totality of the circumstances give rise to
suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those
suspicions. See Sharpe, 470 U.S. at 687; Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977);
United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993); United States v. Cummins, 920
F.2d 498, 500 (8th Cir. 1990); Goodwin v. State, 799 S.W.2d 719, 727 (Tex. Crim. App. 1990).
Once the officer concludes the investigation of the traffic violation, he can no longer lawfully
detain or question the individual unless he has reasonable suspicion to believe another offense is
being committed. See Powell, 5 S.W.3d at 377; Davis, 947 S.W.2d at 245 & n.6; see also
Sharpe, 470 U.S. at 687. If, during the course of a valid investigative detention, the officer
develops a reasonable suspicion that the detainee was engaged in, or soon would engage in,
criminal activity, a continued detention is justified. See Davis, 947 S.W.2d at 245 (citing Crockett
v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)). 

 The temporary detention of a vehicle to allow a canine sniff does not violate the
Fourth Amendment when based on a reasonable suspicion that the automobile contains narcotics. 
A sniff of the outside of an automobile by a trained canine is not a search within the meaning of
the Fourth Amendment. See, e.g., United States v. Place, 462 U.S. 696, 707 (1983); United
States v. McFarley, 991 F.2d 1188, 1191 (4th Cir. 1993); Crockett, 803 S.W.2d at 310 n.5. 
Because a dog sniff of the exterior of a vehicle is minimally intrusive and only discloses the
presence or absence of narcotics, we have previously determined that a temporary detention for
a dog sniff may be based on a reasonable suspicion that the automobile contains narcotics. See
Walter v. State, 997 S.W.2d 853, 858 (Tex. App.--Austin 1999, pet. granted); see also Mohmed,
977 S.W.2d at 628.

 In Davis v. State the police stopped the appellant for suspicion of driving while
intoxicated. See 947 S.W.2d at 241. This suspicion was dispelled by Davis's explanation that he
was tired, not intoxicated, and by the lack of any odor or other indication of alcohol. Davis
refused to consent to a search of his car. The court held that a continued detention of the vehicle
for a dog sweep was unreasonable because the purpose of the investigative detention was resolved
when the officers determined that Davis was not intoxicated. See id. at 245. Thus, a detention
that is not temporary and reasonably related in scope to the circumstances that justified the initial
interference is unreasonable and violative of the Fourth Amendment.

 Various factors have been held to support reasonable suspicion of drug activity to
warrant further questioning and the calling of a canine unit, even when the initial stop is for a
traffic violation. (6) See United States v. Finke, 85 F.3d 1275, 1282 n.4 (7th Cir. 1996) (prior
narcotics convictions, use of rental car, and nervousness); United States v. Bloomfield, 40 F.3d
910, 915 (8th Cir. 1994) (perspiration, evasiveness in answering questions, possession of pager,
and odor of masking agent); United States v. Shabazz, 993 F.2d 431, 433 (5th Cir. 1993) (false
identification and inconsistent stories); Mohmed, 977 S.W.2d at 628 (nervousness and odor of
drugs). 

 An officer may also draw upon his experience and training to assess the existence
of reasonable suspicion. When used by trained law enforcement officers, objective facts,
meaningless to the untrained, can be combined with permissible deductions from such facts to
form a legitimate basis for suspicion of a particular person. See United States v. Cortez, 449 U.S.
411, 418 (1981). The officer must have specific, articulable facts that, in light of the officer's
experience and knowledge, lead the officer to the conclusion that criminal activity is underway
and that the detained person is connected with the activity. See Perez, 818 S.W.2d at 516. After
the initial traffic stop, the officer is entitled to rely on all of the information obtained during the
course of his contact with the citizen in developing the articulable facts that would justify a
continued investigatory detention. See Powell, 5 S.W.3d at 377. 

 Citing our opinion in Walter v. State, appellee asserts that Trooper Upright was not
justified in detaining him for the canine sweep. In that opinion, we held that a twenty-minute
detention following a routine traffic stop to await the arrival of a drug dog was not reasonably
related in scope to the circumstances that justified the stop and was not justified by any subsequent
observations by the officer. 

 Here, the trooper's suspicions justified transforming the traffic stop for the issuance
of a citation into an investigative stop. The facts support Trooper Upright's reasonable suspicion
that appellee was involved in criminal activity. As he pulled Parnell's car over, the trooper
immediately noticed that the car resembled a police vehicle. The trooper observed that the car
was solid black with tires, antennae, and a red ball cap on the dashboard similar to those of police
cars. Based on his training and experience, the trooper testified that some people imitate police
officers, hoping they will not get stopped on the highway by local police who may assume the car
is driven by an officer from another county. The trooper also noticed that Parnell exited his car
"fast" and bare-footed. The trooper testified that Parnell did not seem to want the trooper near
the car. When the trooper approached the car, he observed women's clothing in the back seat. 

 Unlike most motorists who are concerned with the reasons for being stopped by a
law enforcement officer, Parnell immediately began to talk about a fight with his girlfriend in
Corpus Christi. As the trooper listened to Parnell's desultory account of the fight, he observed
that Parnell was unusually nervous for a traffic stop. Because Parnell was talkative and had
certain mannerisms and movements, the trooper suspected that Parnell might be under the
influence of methamphetamine. A check of Parnell's criminal history revealed that he had a
criminal record.

 As the trooper continued to question him, Parnell's later account of the fight with
the girlfriend conflicted with an earlier version. Although Parnell first described the fight as an
argument in which he left his girlfriend with her dad, he then told the trooper they "didn't really
fight," and then almost immediately told the trooper that she was getting ready to hit him. When
the trooper asked where the dad lived, Parnell responded that the father "wouldn't tell her where
he was living at." He then explained that the girl's mother lived in Oklahoma and he was
supposed to drop her clothes off at her mother's house. 

 Significantly, Parnell's response to the trooper's request to search did not dispel
the trooper's suspicion that the car might contain contraband. Responding that he did not want
to go to jail for something "the friends had," Parnell suggested that while there might be
something in the car, it did not belong to him. When the trooper further asked if he had
contraband, Parnell responded: "I don't know, you know. All I know is she's got a bunch of stuff
in there, you know." And subsequently, Parnell volunteered: "I mean, she probably could have
been mad enough to put something in there just to get me in trouble." In response to a question
by the trooper as to whether she was involved in any type of narcotics activity, Parnell told the
officer, "There's no telling as weird as she was acting." He added: "You know, it sounds like
I'm going to get in trouble for somebody else's stuff is what it sounds like." 

 Based upon his drug interdiction experience and training, Trooper Upright
recognized that Parnell was acting in an unusual, and therefore suspicious, manner. Instead of
dispelling his concerns, the responses to his questions only served to create more suspicions. The
trooper was entitled to assess the circumstances and Parnell's behavior in light of his experience
as a law enforcement officer and his knowledge of drug dealing. The peculiar circumstances of
this case were sufficient to arouse the necessary suspicion that something was amiss. That
suspicion, in turn, gave the trooper leeway to expand the scope of the traffic stop into an
investigative detention. 

 Perhaps none of these facts, standing alone, would give rise to a reasonable
suspicion; but taken together and viewed in light of the trooper's experience and training, they
provided reasonable suspicion to further detain Parnell for the canine sniff. Factors which may
be insufficient standing alone may nonetheless arouse a reasonable suspicion when taken as a
whole. See United States v. Sokolow, 490 U.S. 1, 18 (1989). We conclude that these factors, in
light of the trooper's experience and personal knowledge, constituted specific and articulable facts
to support Trooper Upright's reasonable suspicion that Parnell's vehicle was likely to contain
drugs. Even assuming that the purpose of the traffic stop was fulfilled at the moment the trooper
issued the warning citation, the trooper's detainment after he issued the citation was based on his
reasonable suspicion developed before he issued the citation. Because he developed a reasonable
suspicion of criminal activity, the trooper was justified in continuing the investigation for an
additional three minutes for a canine sweep after the conclusion of the traffic stop. 

 In its findings of fact, the district court found that at the time he requested a canine
unit, the trooper did not have reasonable suspicion to conduct a search. Because the court found
that reasonable suspicion must exist at the time of the request, it concluded that any detention
beyond the issuance of the citation was unlawful. While we defer to the court's factual findings,
we must disagree with the court's application of the law to those facts. See Guzman, 955 S.W.2d
at 89. 

 In United States v. Sharpe the Supreme Court addressed the duration of a detention
in the context of an automobile stop: "Much as a 'bright line' rule would be desirable, in
evaluating whether an investigative detention is unreasonable, common sense and ordinary human
experience must govern over rigid criteria." 470 U.S. at 685. In assessing whether a detention
is too long in duration to be justified as an investigative stop, courts have viewed instead "whether
the police diligently pursued a means of investigation that was likely to confirm or dispel their
suspicions quickly." Id. 

 We conclude that, given the circumstances facing him, Trooper Upright pursued
his investigation in a diligent and reasonable manner. During the brief stop, the trooper
proceeded expeditiously to accomplish the initial purpose of the stop, that is, to issue a speeding
citation, and to dispel concerns raised by Parnell's conduct at the very outset of the stop. Given
the initial appearance of the car along with Parnell's behavior and explanations, the detention was
simply the result of a graduated response to unfolding events. See Place, 462 U.S. at 709 n.10. 
This case does not involve any delay unnecessary to the legitimate investigation of the facts as
they unfolded. 

 Parnell presented no evidence that the trooper was dilatory in his investigation, and
the district court found none. Here, the trooper acted diligently; the canine unit was summoned
expeditiously and arrived within ten minutes. We find that the further detention was based on
objectively reasonable and articulable suspicions that are consistent with the Fourth Amendment.

 We disagree with the district court's conclusion that for the continued detention to
be lawful the trooper must have possessed reasonable suspicion at the time he requested a canine
unit. The Supreme Court has specifically rejected the argument that the subjective intentions of
an officer will make the continued detention of an individual illegal under the Fourth Amendment. 
As the Court stated in Whren, "the fact that [an] officer does not have the state of mind which is
hypothecated by the reasons which provide the legal justification for the officer's action does not
invalidate the action taken as long as the circumstances, viewed objectively, justify that action
. . . . Subjective intentions play no role in ordinary, probable cause Fourth Amendment
analysis." 517 U.S. at 813 (quoting Scott v. United States, 436 U.S. 128 (1978)). In assessing
reasonable suspicion, the facts are judged against an objective standard: "would the facts
available to the officer at the moment of the seizure or the search warrant a man of reasonable
caution in the belief that the action taken was appropriate?" Terry, 392 U.S. at 21-22. Thus, in
assessing whether the trooper possessed reasonable suspicion to continue to detain Parnell for the
purposes of a canine sniff, we do not view the facts known to the trooper at the time of the
request. Rather, we view the facts objectively at the time he completed the issuance of the ticket
that justified the stop in the first place. See id. By the time of the issuance of the citation, the
trooper possessed ample facts to support his reasonable suspicion that there was criminal activity. (7) 


 Under the totality of the circumstances, Trooper Upright could reasonably suspect
Parnell of criminal activity and was entitled to detain him for an additional three minutes to
conduct a canine sweep. 


CONCLUSION

 Based on these specific, articulable facts, we hold that the trooper had reasonable
suspicion to detain Parnell's car for a canine sweep. We hold that, at the conclusion of the traffic
stop, the trooper had reasonable suspicion to believe that Parnell was engaged in criminal activity
and that the use of the dog did not entail a prolonged detention which implicated Fourth
Amendment concerns. We further hold that the district court erred in granting the motion to
suppress. Accordingly, the orders granting appellee's motion to suppress are reversed, and the
causes are remanded.



 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded on Both Causes

Filed: August 10, 2000

Do Not Publish
1. The entire traffic stop was recorded on videotape by means of a camera on Trooper
Upright's patrol car. The tape was admitted into evidence and has been reviewed by this Court
as part of the appellate record. The court reporter also transcribed the audio portion of the
videotape.
2. The record does not reflect what the weather was like on this winter night.
3. A "free-air" search is evidently a perimeter sweep of the exterior of a vehicle by the dog
and its handler. 
4. In a traffic stop, an officer may demand identification, a valid driver's license, and proof
of insurance from the driver. See Tex. Trans. Code Ann. §§ 521.025, 601.053 (West 1999);
Davis v. State, 947 S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997). In addition, it is not
unreasonable for an officer to check for outstanding warrants. See id.
5. However, when an officer asks routine questions during the course of a Terry stop, the
driver is not legally obligated to answer, may not be compelled to answer, and may not be
arrested for refusing to answer. See Terry v. Ohio, 392 U.S. 1, 34 (1968) (White, J.,
concurring). 
6. Courts are divided on whether using a dog to detect drugs is a search, but no court of which
we are aware has held that more than a reasonable suspicion is necessary to justify this kind of
a warrantless search if indeed it is a search. See, e.g., United States v. Goldstein, 635 F.2d 356,
361 (5th Cir. 1981) (not a search); United States v. Sullivan, 625 F.2d 9, 13 (4th Cir. 1980)
(same). Because the Supreme Court in United States v. Place stated that "exposure of
respondent's luggage, which was located in a public place, to a trained canine--did not constitute
a 'search' within the meaning of the Fourth Amendment," 462 U.S. 696, 707 (1983)
, some courts
have held that a dog sniff of a car in a public place does not require reasonable suspicion. See,
e.g., United States v. Ludwig, 10 F.3d 1523 (10th Cir. 1993); United States v. Colyer, 878 F.2d
469 (D.C. Cir. 1989).
7. Based on his experience and training, it is not unreasonable for a law enforcement officer
to conclude that a suspicion or hunch may ripen into reasonable suspicion or even that, during the
course of his interaction with the driver, the driver may consent to a canine search. That the
officer summoned a canine unit before a hunch had ripened into reasonable suspicion or probable
cause does not alone taint a continued detention if the detention itself is based upon reasonable
suspicion. Moreover, at the time he requested the canine unit, the trooper had already observed 
that the vehicle resembled a police car as well as Parnell's agitated demeanor. Parnell had also
told the trooper about the fight with the girlfriend, and the trooper had seen the woman's clothing
in the car. In addition, Parnell had already told the trooper that there was "no telling" what his
girlfriend and her friends might have left in his car. Because we find that the trooper had a
reasonable suspicion to detain Parnell three minutes beyond the issuance of the citation for the
canine sweep, we need not reach the issue of whether he had a reasonable suspicion at the time
he requested the unit.



ep. 


CONCLUSION

 Based on these specific, articulable facts, we hold that the trooper had reasonable
suspicion to detain Parnell's car for a canine sweep. We hold that, at the conclusion of the traffic
stop, the trooper had reasonable suspicion to believe that Parnell was engaged in criminal activity
and that the use of the dog did not entail a prolonged detention which implicated Fourth
Amendment concerns. We further hold that the district court erred in granting the motion to
suppress. Accordingly, the orders granting appellee's motion to suppress are reversed, and the
causes are remanded.



 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded on Both Causes

Filed: August 10, 2000

Do Not Publish
1. The entire traffic stop was recorded on videotape by means of a camera on Trooper
Upright's patrol car. The tape was admitted into evidence and has been reviewed by this Court
as part of the appellate record. The court reporter also transcribed the audio portion of the
videotape.
2. The record does not reflect what the weather was like on this winter night.
3. A "free-air" search is evidently a perimeter sweep of the exterior of a vehicle by the dog
and its handler. 
4. In a traffic stop, an officer may demand identification, a valid driver's license, and proof
of insurance from the driver. See Tex. Trans. Code Ann. §§ 521.025, 601.053 (West 1999);
Davis v. State, 947 S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997). In addition, it is not
unreasonable for an officer to check for outstanding warrants. See id.
5. However, when an officer asks routine questions during the course of a Terry stop, the
driver is not legally obligated to answer, may not be compelled to answer, and may not be
arrested for refusing to answer. See Terry v. Ohio, 392 U.S. 1, 34 (1968) (White, J.,
concurring). 
6. Courts are divided on whether using a dog to detect drugs is a search, but no court of which
we are aware has held that more than a reasonable suspicion is necessary to justify this kind of
a warrantless search if indeed it is a search. See, e.g., United States v. Goldstein, 635 F.2d 356,
361 (5th Cir. 1981) (not a search); United States v. Sullivan, 625 F.2d 9, 13 (4th Cir. 1980)
(same). Because the Supreme Court in United States v. Place stated that "exposure of
respondent's luggage, which was located in a public place, to a trained canine--did not constitute
a 'search' within the meaning of the Fourth Amendment," 462 U.S. 696, 707 (1983)
, some courts
have held that a dog sniff of a car in a public place does not require reasonable suspicion. See,
e.g., United States v. Ludwig, 10 F.3d 1523 (10th Cir. 1993); United States v. Colyer, 878 F.2d
469 (D.C. Cir. 1989).
7. Based on his experience and training, it is not unreasonable for a law enforcement officer
to conclude that a suspicion or hunch may ripen into reasonable suspicion or even that, during the
course of his interaction with the driver, the driver may consent to a canine search. That the
officer summoned a canine unit before a hunch had ripened into reasonable suspicion or probable
cause does not alone taint a continued detention if the detention itself is based upon reasonable
suspicion. Moreover, at the time he requested the canine unit, the trooper had already observed 
that the vehicle resembled a police car as well as Parnell's agitated demeanor. Parnell had also
told the trooper about the fight with the girlfriend, and the trooper had seen the woman's clothing
in the car. In addition, Parnell had already told the trooper that there was "no telling" what his
girlfriend and her friends might have left in his car. Because we find that the trooper had a
reasonable suspicion to detain Pa