THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DOUGLAS DeRUSHA, Defendant-Appellee.

First District (2nd Division)   No. 78-1544

Opinion filed July 24, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Paul C. Gridelli, and Wesley H. H. Ching, Assistant State's Attorneys, of counsel), for the People.

Stephen R. Kramer, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

The State appeals from an order suppressing evidence against defendant, Douglas DeRusha, who had been charged with possession of a

sawed-off shotgun. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(7).) The State contends that the police acted properly in seizing the weapon under the automobile exception to warrantless searches and because a passenger in defendant's car gave permission to search the car after defendant's arrest.

On December 13, 1977, Officer Frank Murphy of the Wheeling Police Department observed defendant pushing his car into a gasoline station; a female passenger, Anna Marie Malock, was in the car. Officer Murphy entered the service station office, arrested defendant and placed him in handcuffs.[1] At this juncture Officer Kaminski arrived and intervened when Miss Malock tried to assist defendant. Miss Malock then returned to defendant's car. Before being taken to the police station, defendant was asked what he wanted done with his car. The police said that they would drive the vehicle to the police station, it could be towed or his passenger could take the car. He indicated that he wanted Miss Malock to have the car and was allowed to speak to her about the matter. Officer Murphy overheard defendant say to her, "get rid of it," as he glanced toward the back seat, but he did not relate defendant's statements to Officer Kaminski. Officer Murphy then placed defendant in a police car and was driving to the police station when he was requested by radio to return to the gasoline station.

Police Officer Bert Kaminski testified that he was in plain clothes when he arrived at the gas station and intervened between Miss Malock and Officer Murphy. He confirmed that defendant wanted his car, which had the keys in the ignition, turned over to Miss Malock. After defendant and Officer Murphy departed, Kaminski went into the gas station office. Shortly thereafter, Miss Malock came into the station office to use the telephone. She then remarked to the station owner, "You know, the guy they just arrested has a sawed-off shotgun in his car." Two station employees were also present. She again repeated this statement directly to Officer Kaminski and said the gun was in the suitcase. He then summoned assistance. When Officer Rivera arrived, Miss Malock gave permission to look for the gun. Officer Rivera opened the suitcase located on the back seat, and a sawed-off shotgun was discovered. The record does not indicate that any force was utilized in opening the suitcase.

Officer Kaminski also stated that, when he became aware that a gun was in the car, he would have prevented the removal of the vehicle, and he did not fear for his safety upon learning of the weapon. Miss Malock was taken to the police station to give a statement after the gun was recovered.

---

[1] Officer Murphy was in court on the day prior (December 12, 1977) for certain charges pending against defendant. However, when defendant did not appear, a bond forfeiture warrant was issued against him.

Anna Marie Malock, defendant's fiancée, testified that after defendant's arrest Officer Kaminski asked her for identification to "run a check" on it. She went into the office area of the service station and asked the attendant what she should do with the gun. Apparently Officer Kaminski overheard her remark and replied, "What gun?" When she indicated the gun was in the suitcase, he went back to defendant's car and seized the weapon. She claimed that defendant did not give her custody of the car after his arrest, nor did she give police permission to search the car.

On the day of defendant's arrest, Miss Malock had given a written statement to police in which she indicated that she told them of the gun and gave police permission to search the car but not to remove the gun. In her statement she also said that she was confused and had denied giving permission to police to remove the gun from the automobile.

Defendant testified that his car was out of gas when he was arrested, and he did not give Miss Malock authority to permit anyone to search his car.

The State initially argues that the police acted properly when they seized the sawed-off shotgun from defendant's car because the search falls within the automobile exception to the proscription against warrantless searches. Defendant claims that his vehicle was immobile, that he had already been arrested and taken from the scene, and that no exigent circumstances existed to justify the search of his car without a warrant.

The record irrefutably establishes that, after defendant was arrested and was taken from the gasoline station, Miss Malock voluntarily informed the police and the service station owner that a gun was in the car. We also believe that a sufficient basis exists in the record to credit Officer Kaminski's statement that she described the weapon as a sawed-off shotgun. This information clearly provided probable cause for the search, and defendant does not contend otherwise in this regard.

In evaluating the validity of the warrantless search in this case, we consider the fact that the weapon was in defendant's automobile, yet also in a suitcase. Instructive in resolution of the appeal is the case of *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476. In *Chadwick* Federal agents, acting upon probable cause, arrested respondents, impounded their automobile and seized a locked footlocker which had been placed in the trunk of the automobile after respondents had removed the luggage from a railroad station. The footlocker was taken to the Federal facility, opened about one hour later without securing a search warrant and found to contain marijuana. The Supreme Court rejected the argument that the lesser standards for the warrantless search of automobiles be applied. In this regard the court commented:

"\* \* \* [T]his Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts. [Citations.]

Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained 'warrantless searches of vehicles \* \* \* in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non existent.' [Citations.]

The answer lies in the diminished expectation of privacy which surrounds the automobile:

> 'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. \* \* \* It travels public thoroughfares where both its occupants and its contents are in plain view.' [Citation.]"

(433 U.S. 1, 12, 53 L. Ed. 2d 538, 549, 97 S. Ct. 2476.)

The court in *Chadwick* held that respondents' right to privacy concerning the contents of the locked footlocker was greater than the privacy aspects of an automobile. Further, the court noted that government agents had exclusive control of the footlocker and there was no danger of its contents being removed while a search warrant was being secured. The court also rejected the argument that the search was conducted incident to an arrest, stating:

> "\* \* \* Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485.)

*United States v. Chadwick* thus presents the countervailing views of the parties in the present case.

Recently, in *Arkansas v. Sanders* (June 20, 1979), 47 U.S.L.W. 4782, the United States Supreme Court applied the principle of *Chadwick* in affirming the suppression of marijuana found during a warrantless search of a suitcase. In *Arkansas v. Sanders* police were informed that respondent would be arriving at an airport and would be carrying a green suitcase containing marijuana. The police watched respondent retrieve the suitcase, place it in the trunk of a taxi and then leave in the taxi. The police stopped the taxi several blocks from the airport and requested the driver to open the trunk. The police then seized the suitcase,

opened it and discovered a quantity of marijuana. The Supreme Court held the search to be unlawful, stating:

"In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where—as in the present case—the police, *without endangering themselves* or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, the unconstitutional [*sic*] right of suspects to prior judicial review of searches will be fully protected." (Emphasis added.) 47 U.S.L.W. 4782, 4787.

We believe that under the circumstances presented in the case at bar the State's position is clearly not supported by the automobile exception to the warrant requirement. However, we believe that a limited basis exists for the conclusion that the police conduct was justified and the trial court erred in suppressing the evidence.

In *United States v. Chadwick* the Supreme Court noted that an accused's luggage might be searched at the time of his arrest if the police had reason to believe that it contained a dangerous instrumentality. The court observed that failure to render the weapon harmless before transporting it to the police station would be "foolhardy." (433 U.S. 1, 15 n. 9, 53 L. Ed. 2d 538, 551 n.9, 97 S. Ct. 2476, 2485 n. 9.) In describing this type of situation the court cited *United States v. Johnson* (2d Cir. 1972), 467 F.2d 630.

In the *Johnson* case the law enforcement officials arrested the three defendants after they robbed a bank. One weapon used in the commission of the offense was a sawed-off shotgun. After the defendants were in custody, an informant notified police that two suitcases belonging to one defendant could be found outside a building in a transient area of the city and that one of the suitcases contained a shotgun. The police went to the location, found the luggage and opened it; one bag contained a loaded sawed-off shotgun. On appeal, defendants urged that the suitcase and weapon were not admissible in evidence because the police acted in contravention of the fourth amendment.

In holding that a search warrant was not necessary, the Federal Court of Appeals observed that the suitcases could have been removed from their location; thus quick police action was necessary in seizing the luggage. Additionally, the court held that opening the suitcases at the time

of seizure, when the defendants were already in custody, was not improper because the police had probable cause to believe they would find a sawed-off shotgun which might be loaded. The court observed that the police action occurred in a high-crime area, and their safety and the safety of others required knowledge of whether the weapon was dangerous. The court rejected the alternatives of taking the unopened suitcases to the police station or leaving police officers at the scene of the seizure while a search warrant was secured. The court concluded that the police had a right to know exactly what was in their possession.

In the present case the record clearly shows that Officer Kaminski had probable cause to believe a sawed-off shotgun was in the suitcase situated on the back seat of defendant's automobile. This weapon is considerably dangerous, and there was a possibility that it was loaded. The situation in the case at bar differs from that in *Chadwick* and *Arkansas v. Sanders* in that here police were not alerted before the arrest to the fact that the suitcase contained a shotgun; but rather, the police learned such fact on-the-scene and were required to make a quick, reasonable decision. Also, the police did not impound the vehicle as in *Chadwick* but rather had allowed defendant to make arrangements with his fiancée for removing the vehicle from the scene. Thus, there was a possibility that the vehicle and its contents would be removed. Moreover, defendant's fiancée as well as the service-station owner and possibly several employees knew the suitcase contained the weapon. Thus, there existed the possibility, albeit remote, that someone could attempt to remove the weapon. (See *United States v. Bryant* (5th Cir. 1978), 580 F.2d 812, 813.) This court recently held in *People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364, that a warrantless search of defendant's purse conducted after defendant was handcuffed and placed in the squadrol violated the fourth amendment. The court noted that the record did not contain nor did the State argue at trial or on appeal that exigent circumstances existed which would have justified the warrantless search. In contrast, the record in the case at bar shows that exigent circumstances existed. The police officers had knowledge that a shotgun was in the suitcase and they would have been "foolhardy" not to render the weapon harmless. We therefore conclude that the police action in the present case was justified.

Accordingly, the order of the circuit court suppressing evidence is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

STAMOS, P. J., and DOWNING, J., concur.