# Illinois Official Reports

## Appellate Court

*People v. Thomas*, 2014 IL App (3d) 120676

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NORMAN E. THOMAS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0676 |
| Filed<br>Modified upon denial<br>of rehearing | October 27, 2014<br><br>January 8, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld defendant's convictions for unlawful possession of a controlled substance and resisting or obstructing a peace officer arising from a free-air sniff by a drug-sniffing dog following a traffic stop for failing to dim the bright lights on the car defendant owned but in which he was riding as a passenger, since defendant's trial counsel was not ineffective in failing to raise the meritless argument that the stop was unnecessarily prolonged by the free-air sniff, after the valid traffic stop, defendant was not subjected to a second seizure that was unlawful and an unlawful search when the officer requested that the windows of the car be closed and the heater be turned on in preparation for the free-air sniff, especially when defendant had already been lawfully seized, and the "prepping" procedure for the free-air sniff is not, according to *Bartelt*, a search in violation of the fourth amendment, and although the evidence was sufficient to sustain defendant's possession conviction based on the cocaine found in the area of the car where defendant was riding, his conviction for resisting or obstructing a peace officer was reduced from a felony to a misdemeanor and the cause was remanded for resentencing due to the absence of any evidence that the officer was injured. |

| Decision Under Review | Appeal from the Circuit Court of Henry County, No. 08-CF-165; the Hon. Charles H. Stengel, Judge, presiding. |
| --- | --- |
| Judgment | Affirmed in part and modified in part; cause remanded. |
| Counsel on Appeal | Michael J. Pelletier and Adrienne River, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | Terence M. Patton, State's Attorney, of Cambridge (Robert M. Hansen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion. Justice Holdridge concurred in the judgment and opinion. Justice O'Brien concurred in the judgment. |

**OPINION**

¶ 1    After a stipulated bench trial, defendant, Norman E. Thomas, was convicted of possession of a controlled substance (720 ILCS 570/402(c) (West 2008)) and resisting a peace officer (720 ILCS 5/31-1(a), (a-7) (West 2008)). The trial court sentenced defendant to 30 months' conditional discharge. Defendant appealed, and this court remanded for further proceedings. *People v. Thomas*, 2011 IL App (3d) 090886-U. Following remand, defendant filed motions for a new trial and to reconsider his amended motion to suppress evidence. Both motions were denied. On appeal, defendant argues that: (1) he could only be found guilty of misdemeanor resisting a peace officer; (2) the State failed to prove actual or constructive possession of cocaine; (3) he received ineffective assistance of trial counsel; (4) he was unlawfully seized as a result of the officer's request to roll up the car windows and turn the heat on; and (5) the officer's request regarding the windows and heat constituted an unlawful search. We affirm in part, modify in part, and remand for further proceedings.

¶ 2                                    FACTS
¶ 3    Defendant was charged by amended information with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2008)), resisting or obstructing a peace officer (720 ILCS 5/31-1(a), (a-7) (West 2008)), and obstructing justice (720 ILCS 5/31-4(a) (West 2008)). Defense counsel filed a motion to suppress evidence, arguing that excessive force had been used by the police. The motion stated that the car defendant was riding in was stopped by

Officer William Rivord for failing to dim its bright lights. Defendant and the driver, William Gordon, told Rivord that there was nothing illegal in the car and they did not consent to a search. Rivord conducted a free-air sniff with his canine unit. After the search, Rivord told defendant and Gordon that the dog had alerted and he was going to search the vehicle. The motion alleged that Rivord and Sergeant Pat Clapper used excessive force to obtain evidence from defendant after he exited the vehicle.

¶ 4    At the hearing on defendant's motion, Gordon testified that on the night of May 3, 2008, he was driving defendant's blue Lincoln when he was stopped by Rivord for failing to dim his bright lights. Defendant was a passenger in the vehicle and was unable to drive because he did not have a valid driver's license. During the stop, Rivord instructed Gordon to start the Lincoln and roll the windows up while Rivord walked his dog around the car. Thereafter, Rivord told Gordon that the dog had alerted and ordered Gordon and defendant out of the car. As Rivord escorted Gordon out of the Lincoln, Gordon heard a second police officer yell at defendant. Gordon saw the second officer call for backup as he was choking defendant on the ground.

¶ 5    Defendant testified that on the date of the stop, he was riding in his Lincoln with Gordon when the vehicle was stopped by Rivord. Rivord asked for Gordon's driver's license, vehicle registration, and proof of insurance. After obtaining the documents, Rivord instructed defendant and Gordon to wait in the car while he returned to his patrol car. Thereafter, Rivord handed the documents back, and he asked Gordon to roll up the windows and turn on the heat because he was going to walk his dog around the car. Following the free-air sniff, Rivord directed defendant and Gordon to exit the car. As defendant got out of the car, two prescription Vicodin pills fell off of his coat and onto the ground. Defendant picked up the pills and put them in his mouth. At that point, Clapper forced defendant to the ground, ordered defendant to open his mouth, and choked defendant. Defendant opened his mouth and did not resist the officer. Eventually, defendant lost consciousness and awoke the following day in a hospital.

¶ 6    On cross-examination, defendant stated that he had swallowed the Vicodin pills that fell on the ground, and he did not recall Clapper's order to step away from a baggie that fell to the ground as he exited the vehicle. Defendant reported that he dropped a piece of plastic that contained the Vicodin pills, but contended that he did not have a baggie. Defendant did not take the pills earlier in the stop because he forgot about them while he was looking for the documents that Rivord had requested.

¶ 7    Rivord testified that he stopped a blue Lincoln at approximately 11:30 p.m. on May 3, 2008, for driving with its bright lights on. Initially, Rivord approached the driver's side window and asked for Gordon's driver's license and proof of insurance. After receiving the documents, Rivord advised Gordon and defendant that he was a canine officer and asked if there was anything in the Lincoln that he needed to know about. Defendant and Gordon replied in the negative, and Rivord said that he was going to conduct a free-air sniff. Rivord asked Gordon to roll up the vehicle windows and turn the heat on. Rivord "immediately, before doing anything else, got [his] dog out and walked the dog around the car." The dog alerted on defendant's side of the Lincoln by the passenger door. Rivord returned the dog to his patrol car and reapproached the Lincoln. Sometime after the stop began, Clapper arrived at the scene.

¶ 8    Following the dog alert, Rivord approached the driver's side door, and Clapper walked up to the passenger door. Rivord informed defendant and Gordon of the dog alert and directed them to exit the vehicle. As Rivord and Gordon reached the back corner of the Lincoln, Rivord saw defendant get out of the car, and he heard Clapper command defendant to leave something

on the ground. Defendant bent over, picked something up, and placed it in his mouth. Clapper told Rivord that defendant had put a baggie containing a white substance in his mouth, and he grabbed defendant. Rivord ran to Clapper's assistance, and the officers and defendant fell to the ground in a struggle. Defendant did not obey the officers' commands to place his hands behind his back or to open his mouth. Rivord saw what appeared to be chewed-up pieces of crack on defendant's lips and tongue. Eventually, the officers restrained defendant and put pieces of the substance from defendant's mouth in an evidence bag and bagged pieces of the substance that were lying on the ground.

¶ 9 On cross-examination, Rivord stated that he began the free-air sniff five to seven minutes into the stop. Rivord said that the substance in defendant's mouth did not look like a prescription pill and, based on his training, he thought the substance was chewed-up pieces of crack cocaine. During a search of the vehicle, officers discovered cocaine between the driver and passenger seats.

¶ 10 The trial court found that Rivord was a credible witness, there was probable cause for the free-air sniff, and there was no delay. The trial court denied defendant's motion to suppress.

¶ 11 On June 16, 2009, the court dismissed the obstructing justice charge. Following a stipulated bench trial, defendant was found guilty of unlawful possession of a controlled substance and resisting a peace officer. The trial court sentenced defendant to 30 months' conditional discharge, and defendant appealed.

¶ 12 In the first appeal, we held that the parties and the court intended that the stipulated proceedings were not to operate as a guilty plea. *People v. Thomas*, 2011 IL App (3d) 090886-U. As a result, we remanded the cause to the trial court for admonishments pursuant to Illinois Supreme Court Rule 605(b) (eff. Oct. 1, 2001).

¶ 13 Following the remand, defendant filed a motion for new trial and to reconsider his amended motion to suppress. At the reconsideration hearing, Rivord testified that he stopped the vehicle defendant was riding in for failing to dim its headlights in the face of oncoming traffic. Defendant testified, in response, that there was no oncoming traffic. The trial court found Rivord's testimony more credible and denied the motion to suppress. Defendant appeals.

¶ 14                                                    ANALYSIS
¶ 15 On appeal, defendant argues that: (1) trial counsel rendered ineffective assistance when he failed to argue that the free-air sniff unlawfully prolonged the traffic stop; (2) the evidence was insufficient to sustain his conviction of resisting a peace officer and possession of a controlled substance; (3) the officer's request to roll up the windows and turn on the heater prior to the dog sniff was an unlawful seizure; and (4) the dog-sniff search was an unreasonable search of the vehicle's interior.

¶ 16                                          I. Motion to Suppress
¶ 17 Defendant argues that reversal of the trial court's ruling on his motion to suppress is warranted for two reasons: (1) he received ineffective assistance of counsel; or (2) he was unlawfully seized and searched as result of the officer's orders to roll up the vehicle windows and turn on the heater. In reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). A trial

court's findings of fact will only be reversed where they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. We review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Id.*

¶ 18                          A. Ineffective Assistance of Counsel

¶ 19     Defendant argues that counsel was ineffective for failing to challenge the length of the stop, which was unnecessarily prolonged by the free-air sniff.

¶ 20     To prevail on an ineffective assistance of counsel claim, defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced defendant as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Bew*, 228 Ill. 2d 122, 127 (2008). Specifically, defendant must prove that counsel's performance was objectively unreasonable under prevailing professional norms and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Hughes*, 2012 IL 112817, ¶ 44.

¶ 21     The federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Stopping a vehicle and detaining its occupants constitutes a seizure. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *People v. Harris*, 228 Ill. 2d 222 (2008). An initially lawful seizure can violate the fourth amendment if its manner of execution unreasonably infringes interests protected by the Constitution. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Harris*, 228 Ill. 2d at 235. For example, a traffic stop that is justified by the interest in issuing a warning ticket to the driver can become unlawful if it is "prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407; see also *Harris*, 228 Ill. 2d at 235. "Brevity is an important factor in determining whether a detention was reasonable, but the court should also consider whether the police acted diligently in pursuing the investigation." *People v. Welling*, 324 Ill. App. 3d 594, 602 (2001).

¶ 22     In the instant case, defense counsel did not argue that Rivord unlawfully prolonged the stop by conducting a free-air sniff. The trial evidence showed that Rivord initiated the stop because Gordon did not dim his bright lights. Rivord approached the vehicle, asked Gordon for the necessary documentation, and stated that he was a canine officer and was going to conduct a free-air sniff. The free-air sniff began between five and seven minutes into the stop. While there is no talismanic period of time beyond which an initially justified traffic stop becomes an unreasonable seizure (*People v. Koutsakis*, 272 Ill. App. 3d 159, 163 (1995)), a number of cases hold that approximately 10 to 12 minutes is the average amount of time for a traffic stop with warning tickets. See *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720 (free-air sniff 7 to 8 minutes into a traffic stop did not prolong the stop and a stop of 10 to 12 minutes to issue a warning ticket was reasonable); *People v. Kats*, 2012 IL App (3d) 100683 (nine-minute stop to issue a warning ticket was sufficiently brief); *People v. Staley*, 334 Ill. App. 3d 358 (2002) (18-minute traffic stop that included confirming the status of defendant's driver's license and license plate registration and issuing two traffic citations was not unduly long). In light of this record, we agree with the trial court that the stop at issue was not unreasonably prolonged.

¶ 23     However, defendant argues that the duration of the seizure is not conclusive of whether the stop was prolonged. Rather, defendant contends that the stop was unreasonably prolonged by the officer's deviation from writing a warning ticket or citation for the headlight infraction to

conduct the free-air sniff. See *People v. McQuown*, 407 Ill. App. 3d 1138 (2011) (stop was unduly prolonged where officer did not ask for a canine unit until 13 minutes after the initial purpose of the stop had ended, and canine unit did not arrive for an additional 25 minutes); *People v. Al Burei*, 404 Ill. App. 3d 558 (2010) (stop of vehicle was unreasonably prolonged by officer's continued questions after the initial purpose of the stop had been satisfied); *People v. Baldwin*, 388 Ill. App. 3d 1028 (2009) (traffic stop was deemed unreasonably prolonged where the stopping officer had to call a second officer to bring a drug dog).

¶ 24 In contrast to defendant's cited cases, Rivord had a drug-sniffing dog in his patrol vehicle and conducted the free-air sniff without delay. Rivord did not pose additional questions to delay defendant and avoided any undue delay as he was already in possession of the dog. Additionally, no additional suspicion or probable cause was required to conduct a free-air sniff because the search did not infringe on defendant's privacy interests and only exposed the presence of contraband items. *Caballes*, 543 U.S. 405.

¶ 25 Defendant has not shown that defense counsel's omission of a prolonged stop argument altered the outcome of the proceeding. Therefore, defense counsel was not ineffective for failing to advance a meritless argument.

¶ 26 B. Search and Seizure

¶ 27 1. Seizure

¶ 28 Defendant argues that if we do not reverse the denial of his motion to suppress on ineffective assistance grounds, remand is necessary to determine if defendant was unreasonably seized as a result of the officer's request to roll up the car windows and turn on the heat. Initially, we note that defendant was lawfully seized at the time the vehicle he was riding in was stopped for a traffic violation. See *Brendlin v. California*, 551 U.S. 249 (2007) (passengers in a stopped vehicle are lawfully seized at the time the vehicle is stopped by the police). Until the traffic stop was complete, defendant was not free to leave and therefore could not be subject to a second, simultaneous seizure. See *People v. Ortiz*, 317 Ill. App. 3d 212, 221 (2000) (investigative stop was complete after officer returned defendant's driver's license and issued a warning).

¶ 29 In his petition for rehearing, defendant takes issue with our ruling that ordering the defendant to roll up his windows and turn on the fan was not a second seizure. In support, he cites the dissent in *People v. Bartelt*, 241 Ill. 2d 217, 245-46 (2011) (Freeman, J, dissenting). We find that the issue of whether the relevant police conduct was a "second seizure" or a "search," is a semantic one. Was it a search or a second seizure? Pick one; it does not matter. We find that the notion of a "second seizure" of someone who is already seized somewhat confusing. Had the police, after ordering defendant to roll up his windows and turn on the fan, then ordered the driver to hit the trunk release button, would that be a "third seizure" or a "double-secret seizure?" As set forth below, we believe that the setup procedure at issue constituted a search and not a seizure. The bottom line is the same.

¶ 30 2. Search

¶ 31 Defendant also contends that he was subject to an illegal search when he was ordered to roll up the windows and turn on the heater prior to the dog sniff.

¶ 32     As a matter of first impression, in *People v. Bartelt*, 241 Ill. 2d 217 (2011), our supreme court held that the setup procedure of ordering a vehicle occupant to roll up her windows and turn the blowers on high before an officer conducted a dog sniff of the exterior of the vehicle was not an unreasonable search. In support of its decision, the court analogized the setup to the suitcase "prepping" procedure affirmed by the Fifth Circuit in *United States v. Viera*, 644 F.2d 509, 510 (5th Cir. 1981). In *Viera*, Drug Enforcement Administration agents "prepped" the defendants' suitcases before a dog sniff by pressing them lightly with their hands and slowly circulating the air in order to procure a scent from the bags. *Viera*, 644 F.2d at 510. The Fifth Circuit reasoned that the "prepping" procedure was not a search in violation of the fourth amendment because a light press of the hands along the outside of the suitcases was not so intrusive as to require a different result. *Id.* In relying on *Viera*, our supreme noted that "ordering defendant to roll up her windows and turn the blowers on high before conducting the dog sniff was not sufficiently intrusive" as to offend the fourth amendment. *Bartelt*, 241 Ill. 2d at 231.

¶ 33     The *Bartelt* decision requires that we affirm the trial court's ruling on the motion to suppress; however, we believe that *Bartelt* will ultimately be overruled by the United States Supreme Court. As these setup procedures become more common, the United States Supreme Court will undoubtedly grant *certiorari* in a similar case. We acknowledge that one has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974). A car has little capacity for escaping public scrutiny; it travels public thoroughfares where its occupants and its contents are in plain view. See *Cardwell*, 417 U.S. at 590; *People v. DeRusha*, 74 Ill. App. 3d 641, 644 (1979). The occupant of the vehicle does not have a reasonable expectation of privacy against police scraping paint samples from the vehicle's exterior (*Cardwell*, 417 U.S. at 591); having a drug dog sniff a vehicle's exterior (*Caballes*, 543 U.S. at 409); or electronically monitoring a vehicle's movements on a public street (*United States v. Knotts*, 460 U.S. 276, 282 (1983)).

¶ 34     The situation presented here is inherently different from the situations previously addressed by the United States Supreme Court. This is not a "free-air" sniff of the exterior of a vehicle. Rather, this is forcing a vehicle's occupant to make available to officers, without a warrant, something that is normally on the interior of the car and afforded at least some fourth amendment protection. Although a dog sniff is not typically classified as a search, it does not mean that the use of a drug-sniffing dog cannot eventually become a search, and an unlawful one at that. See *Florida v. Jardines*, 569 U.S. ___, 133 S. Ct. 1409 (2013) (holding that an officer's use of a drug-sniffing dog on front porch of a home was a trespassory invasion of the curtilage which constituted a search for fourth amendment purposes). It is not the dog sniff that offends the fourth amendment. It is the police ordering the driver to roll up the windows and activate the fan that crosses the line. This "setup" procedure is analogous to an officer ordering the occupant to empty his pockets and throw the contents out the window onto the ground. The occupant cooperates, and among his personal effects is a small bag containing contraband. The contraband, now in plain view, prompts the officer to place the occupant under arrest. This is not, nor could it ever be, the state of fourth amendment jurisprudence. While plain view and plain smell are established exceptions to the warrant requirement, ordering a vehicle occupant to participate in an assisted sniff of the interior of his vehicle transforms the free-air sniff into a

search governed by the fourth amendment. However, until the setup procedure employed here and in *Bartelt* is overruled, we must affirm.

¶ 35                                II. Sufficiency of the Evidence

¶ 36    Defendant argues that the State failed to prove beyond a reasonable doubt that (1) in resisting arrest, he caused injury to a police officer, and (2) he had actual or constructive possession of the cocaine found between the driver and passenger seats. In a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31.

¶ 37                                    A. Resisting Arrest

¶ 38    Defendant asks this court to reduce his resisting arrest conviction to a misdemeanor because defendant did not stipulate to evidence that a police officer had been injured. The State responds that defendant stipulated that the evidence was sufficient to convict and, therefore, he cannot argue that the evidence was insufficient to prove his guilt of felony level resisting. However, in defendant's first appeal, we held that the stipulated bench trial was not tantamount to a guilty plea, as neither the parties nor the court intended it to function as such. *People v. Thomas*, 2011 IL App (3d) 090886-U. Thus, under the law of the case doctrine, we hold that defendant is not proscribed from arguing he was not proved guilty of felony-level resisting. *People v. Tenner*, 206 Ill. 2d 381, 395 (2002).

¶ 39    To prove defendant guilty of felony-level resisting arrest, the State had to prove that defendant knowingly resisted a peace officer in the performance of an authorized act and proximately caused injury to the officer. 720 ILCS 5/31-1(a), (a-7) (West 2008). Here, defendant stipulated to the evidence presented at the preliminary hearing and the motion to suppress. We have reviewed the record, and find no evidence presented during either of the hearings that the officer was injured. Therefore, we reduce defendant's Class 4 felony conviction to a Class A misdemeanor and remand the matter for resentencing. 720 ILCS 5/31-1(a), (a-7) (West 2008); Ill. S. Ct. R. 615(b)(3).

¶ 40                                B. Possession of Cocaine

¶ 41    Defendant argues that the State did not prove beyond a reasonable doubt that he had actual or constructive possession of the cocaine found on the front seat of the car.

¶ 42    To convict a defendant of unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that defendant had knowledge of the presence of the controlled substance and that he had immediate and exclusive possession or control of the substance. *People v. Woods*, 214 Ill. 2d 455, 466 (2005). "Actual possession is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material." *People v. Givens*, 237 Ill. 2d 311, 335 (2010). "Constructive possession exists without actual personal present dominion over a controlled substance, but with an intent and capability to maintain control and dominion." *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). Constructive possession may exist where there is no physical possession if a defendant has an intent and

capacity to maintain control and dominion over the contraband. *People v. Drake*, 288 Ill. App. 3d 963, 969 (1997).

¶ 43    In the instant case, police found cocaine between the driver and passenger seats. Defendant owned the vehicle. Defendant testified that he was a passenger at the time and, during the stop, he went through the glove compartment to find the documents that Rivord had requested. After the free-air sniff, Rivord approached the driver's side, and Clapper approached the passenger's side. Thereafter, an altercation occurred on the passenger's side when defendant refused to spit out a white substance that he had placed in his mouth. Viewed in the light most favorable to the State, this evidence was sufficient for the trier of fact to reasonably infer that defendant had constructive possession of the cocaine.

¶ 44                                                    CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the circuit court of Henry County is affirmed in part and modified in part, and the cause is remanded for further proceedings.

¶ 46    Affirmed in part and modified in part; cause remanded.